**Johnny JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49039.**

Court of Criminal Appeals of Texas.

Jan. 8, 1975.

Leroy Peavy, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Terry Wilson, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the misdemeanor offense of driving a motor vehicle on a public highway while intoxicated. A jury assessed the appellant's

punishment at confinement in the county jail for one year and a fine of two hundred dollars. The trial court granted the appellant's motion for probation and placed him on probation for one year. The appellant's principal contention is that the evidence is insufficient to support the conviction because the evidence does not show that the appellant drove a motor vehicle on a public highway, and, if he did, the evidence does not show that it was while he was intoxicated.

At approximately 6:00 p. m. September 9, 1972, in response to a call, Highway Patrolman Ronald Edward Berry arrived at the scene of an accident on Wilburforce Street in the Acre Homes Addition north of the Houston city limits. The officer went to the pickup truck which he found in the ditch beside the road. No one was in the vehicle. A number of people were standing on the other side of the street. The officer asked who was driving the vehicle. No one answered, and the officer then asked: "Were one of you driving this vehicle?" The appellant answered: "I was driving." The officer's testimony concerning his investigation at the scene is quoted as follows:

"Q. Would you describe the scene of the accident for us?

"A. Well, it's a small, two-lane blacktop road.

"MR. WILSON [Prosecutor]: Your honor, we would request permission to use the blackboard, so the officer can draw this out.

"THE COURT: Yes.

BY MR. WILSON:

"Q. Officer Berry, while he's bringing that out, I will go ahead.

"Is this a public highway?

"A. Yes, it is.

"Q. Is it within the State of Texas?

"A. Yes, it is.

"Q. Would you approach the blackboard over here, and draw for us this scene of the accident?

"A. Before I draw that, do you want me to draw just the final resting place of the vehicle?

"Q. If you would, initial this, and just draw the final resting place of the vehicle, and indicate your direction, if you would.

"A. (Indicating).

"Q. When you first arrived at the scene, officer, which direction were you coming?

"A. I came from this direction (indicating).

"Q. Is this an open field, or ditch, or what?

"A. Yes, you have a ditch on both sides of the road, and the ditch goes all the way around the curve here, before it is broken down on this side, by a driveway. It goes considerably further down this side, before it is broken. You have a narrow, blacktop road without a center stripe, or any type of markings.

"On this side, approximately the location across from the car, you have several driveways. One of them was rather large. I believe it goes into a church. I'm not sure.

"Q. Were you able to determine the direction of travel that this vehicle was going?

"A. Yes. The vehicle had been traveling due west, or coming from the east.

"Q. Did there appear to be anything on the road that would cause the vehicle to be in the ditch, or run into the pole?

"A. No, not that I could find."

The record does not contain the drawing which the witness used while testifying.

The officer said he could not testify at what time the "accident" occurred. The officer testified to detailed facts on which he based his opinion and stated that when he made his investigation he was of the opinion that the appellant was intoxicated. The officer then took the appellant to Tomball and administered a breathalyzer test which revealed the alcoholic content of the appellant's blood at 8:41 p. m. was .20 percent.

An expert witness testified that in his opinion based on the results of the breathalyzer test and the other evidence the appellant could have been intoxicated several hours prior to the breathalyzer test.

The investigating officer was permitted to testify that his investigation showed that the appellant owned the vehicle.

 To sustain a conviction for driving a motor vehicle while intoxicated, the evidence must show that the appellant drove the vehicle, Gamboa v. State, 481 S. W.2d 423 (Tex.Cr.App.1972); Weldon v. State, 397 S.W.2d 859 (Tex.Cr.App.1966); Sharp v. State, 164 Tex.Cr.R. 80, 296 S. W.2d 932 (1957), that he drove while he was intoxicated, Gilder v. State, 474 S.W. 2d 723 (Tex.Cr.App.1972), and that he drove on a public road or highway or a street or alley, Harris v. State, 499 S.W.2d 9 (Tex.Cr.App.1973). In this case there is no evidence that the ditch where the pickup was standing was in the street right-of-way. There is no evidence that the tracks made by the pickup truck came from the direction of the street, as in Sandford v. State, 334 S.W.2d 184 (Tex.Cr.App. 1960), or that a trail of water leaking from the radiator came from the direction of the street, as in Rawls v. State, 167 Tex.Cr.R. 106, 318 S.W.2d 662 (1958). Also, there is no evidence showing when the appellant drove the pickup truck. See Hudson v. State, 510 S.W.2d 583 (Tex.Cr.App.1974); Duran v. State, 171 Tex.Cr.R. 535, 352 S. W.2d 739 (1962). There was no evidence

of how recently the truck had been driven such as evidence that the engine was still hot, as in Rawls v. State, supra. There is no proof that the appellant drove at the time he was intoxicated.

Since the evidence does not show that the pickup truck had been driven on a public street or highway by the appellant while he was intoxicated, it is insufficient to support the judgment.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.