Reversed
and Rendered and Majority and Concurring Opinions filed September 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00430-CR

____________

 

VINCENT BRASSARD SCILLITANI, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 2

Fort Bend County, Texas

Trial Court Cause No. 125238

 



 

C O N C U R R I N G   O P I N I O N








AJudges must beware
of hard constructions and strained inferences;  for there is no worse torture
than the torture of laws.@[1] This case is
simply another in a long line of decisions eschewing common sense in DWI
appeals.  As an intermediate appellate court we are bound by the precedential
decisions of the Texas Court of Criminal Appeals.  Thus, I do not dispute the
holding or rationale of the majority opinion.  Nevertheless, my conscience and
intellect Agroan@ when precedent obliges an irrational
decision.

The issue presented here is Awhether, after
viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.@  Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 2789 (1979).  In reviewing the sufficiency of the
evidence, we should look at Aevents occurring before, during and after
the commission of the offense.@  Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007).  A[I]t is not necessary that every fact
point directly and independently to the defendant=s guilt; it is
enough if the conclusion is warranted by the combined and cumulative force of
all the incriminating circumstances.@  Johnson v.
State,  871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  Moreover, A[j]uries are
permitted to make reasonable inferences from the evidence presented at trial,
and circumstantial evidence is as probative as direct evidence in establishing
the guilt of an actor.@  Hooper, 214 S.W.3d at 14B15.  Were we to
apply these well-established doctrines to the facts of this case, I do not
doubt that we would find the evidence sufficient to support the jury=s verdict.








Different rules were established many
decades ago with regard to drunken driving.  In Hudson v. State, for
example, two officers patrolling on a state highway at about 9:50 p.m. observed
the tail lights of a number of cars parked on the right shoulder of the road
ahead of them. See 510 S.W.2d 583, 583 (Tex. Crim. App. 1974).  On
arriving at the location of the parked cars, the officers observed a blue 1966
Oldsmobile with a flat tire and warped front wheel resting in a ditch near the
road.  Id.  When the officers approached the disabled vehicle, they saw
the appellant sitting in the driver=s seat with his
feet on the ground. Id.  As they neared it, he threw a number of empty
beer cans and bottles from the car, began cursing, and was >very unruly.= Id.  The
officers placed the appellant under arrest, since he smelled strongly of
alcohol and was, in their opinion, intoxicated.  Id.  The Court of
Criminal Appeals reversed the conviction because the jury could not have
reasonably deduced from the evidence that the vehicle had ever been driven on a
public highway, that the defendant had ever been driving the vehicle, or that
he was intoxicated at the time of the accident.  See id. at 584.

Likewise, in Johnson v. State, a
highway patrolman came across a crowd of people gathered around a pickup truck
which was in the ditch beside the road.  See 517 S.W.2d 536, 537  (Tex.
Crim. App. 1975).  An intoxicated man in the crowd told the patrolman that he
had been driving the vehicle.  See id. 537-38.  The Court of Criminal
Appeals found the evidence legally insufficient to support a conviction for
driving while intoxicated.  See id.  The court first reasoned that there
was no evidence to show the defendant had been driving on a public highway
before veering into the adjacent ditch. See id. at 538.  (Presumably,
the pickup could have been mysteriously dropped from the sky.)  Second, the
court concluded there was no evidence to show the defendant was intoxicated at
the time of the accident.  See id. 

Capital murder convictions may be
sustained on evidence more tenuous  than that presented in Hudson and Johnson.[2] 
However, our cultural affinity for alcohol and automobiles has, in my judgment,
prejudiced Texas jurisprudence.








I agree there must be some proof of a
temporal connection between intoxication and driving.  It is, after all, an
element of the offense.  We must also be mindful that Aintoxication does
not occur immediately upon the consumption of alcoholic beverages.@  State v.
Ollison, 236 S.W.3d 66, 69 (Mo. Ct. App. 2007).  In fact, the time interval
between consumption and intoxication may be thirty to ninety minutes.  Id. 
However, collisions with fixed objects well off the roadway are, by their
nature, indicative of intoxication.

Here, Trooper Hackney was dispatched to an
accident scene at 1:58 a.m. where he observed a vehicle in the ditch adjacent a
public road.  Two tow trucks and appellant=s mother had
arrived moments before the trooper.  Appellant admitted he had been driving the
vehicle on the roadway when he lost control and crashed into the ditch. 
Moreover, appellant could not recall or explain how he lost control of his
vehicle.  The majority holds (as we must in light of Hudson and Johnson)
that no reasonable jury could have concluded from this evidence that appellant
was intoxicated at the time of the accident.  It is an interesting legal
theory, but how does our decision square with reality?

It is true that both sober and intoxicated
drivers have accidents.  But how many times does a sober driver inexplicably
leave the roadway?  Certainly, a sober driver may be distracted, experience a
mechanical failure, or lose traction.  However, one indicator of sobriety is
that the sober driver has some opinion, understanding, or theory as to how he
left the roadway and collided with a fixed object.  Here, appellant had no
clue.  Moreover, the arrival of tow trucks and appellant=s mother, in the
early morning hours, at the accident site, moments before the trooper=s arrival,
indicate the recent nature of the accident.  However, the evidence presented
here is no more compelling than that presented in Hudson and Johnson.  
As an intermediate appellate court, we are bound by precedent.  Nevertheless, Athere comes a
point where [an appellate court] should not be ignorant as judges of what we
know as men.@  Watts v. Indiana, 338 U.S. 49, 52, 69 S.Ct.
1347, 1349, 93 L.Ed 1801  (1949).  Accordingly, if we were not restrained by
precedent, I would find the evidence legally sufficient.








With these
observations, I reluctantly concur in the judgment.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

Panel consists of Chief Justice
Hedges, Justice Frost, and Senior Justice
Hudson (Frost, J., majority).*

 

Publish C Tex.
R. App. P. 47.2(b).









[1]   Francis
Bacon, Essays or Counsels 131 (Charles W. Eliot ed., P. F. Collier &
Son 1969) (1625).





[2]  For example, in a DWI case, the State must prove (1)
intoxication and (2) drivingCand the temporal
relationship of these two facts is important.  Likewise, in some capital murder
cases, the State must prove (1) robbery and (2) murderCand the temporal relationship of these two facts is
important.  To constitute capital murder, the actor=s intention to take the victim's property must precede
his murder of the victim; otherwise, the offense is murderCnot capital murder.

In a DWI case,
proof that a police officer was dispatched to an accident scene where he
encountered an intoxicated person who admitted he was driving the vehicle is
legally insufficient.  However, in a capital murder case, proof that a
defendant killed the victim and subsequently took the victim=s property, is sufficient to show his pre‑existing
intent to rob the victim.  White v. State, 779 S.W.2d 809, 816 (Tex.
Crim. App. 1989).  While acknowledging that it is certainly possible in such a scenario
that the theft of property was an afterthought, the Court of Criminal Appeals
has held such evidence sufficient to sustain the imposition of the death
penalty.  See id.





*  Senior Justice Harvey Hudson, sitting by assignment.