Vincent Brassard **SCILLITANI,**
Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 14–08–00430–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 21, 2011.

Rehearing Overruled July 21, 2011.

Anthony Ray Segura, Sugar Land, for Appellant.

John F. Healey, Jr., Richmond, for Appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION ON REMAND

KEM THOMPSON FROST, Justice.

Appellant Vincent Brassard Scillitani was convicted of the offense of driving while intoxicated. On remand from the Texas Court of Criminal Appeals this court considers whether the evidence is sufficient to support his conviction and whether the trial court erred in denying his motion to suppress evidence of breath-test results. We affirm.

### Factual and Procedural Background

Trooper Patrick Hackney responded to a 1:58 a.m. dispatch call involving a single-vehicle accident. When he arrived on the scene, the trooper saw a vehicle resting in a ditch and encountered appellant, who admitted driving the vehicle. Appellant explained to the officer that he did not know how he lost control of the vehicle. At the scene the trooper also encountered two tow-truck drivers and appellant's mother. The trooper learned that appellant had notified his mother of the accident, and she had arrived before the trooper. Trooper Hackney testified that the

vehicle appellant was driving went off the road, into a ditch, and hit a fence pole. Trooper Hackney testified there were no skid marks on the road.

The trooper smelled alcohol on appellant's breath, but appellant denied having consumed any alcohol. The trooper conducted several field sobriety tests. Appellant exhibited all six clues of intoxication on the horizontal gaze nystagmus (HGN) test, two of eight clues of intoxication on the walk-and-turn field test, and no clues of intoxication on the a one-leg-stand test. Appellant consented to a preliminary breath test, which confirmed the presence of alcohol on his breath. In Trooper Hackney's opinion, the accident was caused by appellant's driving while intoxicated and his driving at an unsafe speed on wet roads.

Based on the trooper's observations and field testing, he placed appellant under arrest for driving while intoxicated. Following his arrest, appellant submitted two breath samples on an Intoxilyzer machine. The first sample showed appellant's breath alcohol level to be 0.135 grams of alcohol per 210 liters of breath at 3:32 a.m. A second sample at 3:35 a.m. showed appellant's breath alcohol level to be 0.133 grams of alcohol per 210 liters of breath.

The State charged appellant with the offense of driving while intoxicated. Appellant pleaded "not guilty" and filed a motion to suppress the results of the Intoxilyzer breath tests. The trial court denied the motion. The jury found appellant guilty as charged. The trial court assessed punishment at 180 days in the Fort Bend County Jail, probated for fifteen months, and a fine of $750.

Appellant appealed his conviction to this court. In his first issue, appellant challenged the sufficiency of the evidence to support his conviction and, in his second issue, appellant claimed that the trial court

erred in denying his motion to suppress. *See id.* Relying upon binding precedent from the Court of Criminal Appeals and opinions from the First Court of Appeals, this court sustained appellant's first issue and concluded that the evidence was legally insufficient to support his conviction. *See Scillitani v. State,* 297 S.W.3d 498, 502–03 (Tex.App.-Houston [14th Dist.] 2009) (relying on *Johnson v. State,* 517 S.W.2d 536, 538 (Tex.Crim.App.1975), *Stoutner v. State,* 36 S.W.3d 716 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd), and *Weaver v. State,* 721 S.W.2d 495 (Tex. App.-Houston [1st Dist.] 1986, pet. ref'd)), *vacated,* 315 S.W.3d 542 (Tex.Crim.App. 2010). This court did not reach the merits of appellant's second issue.

The State filed a petition for discretionary review. While the petition was pending, the Court of Criminal Appeals decided a case with a similar issue. *See Kuciemba v. State,* 310 S.W.3d 460 (Tex.Crim.App. 2010). In response to the State's petition for review in the case under review, the high court noted that the intermediate appellate court in *Kuciemba* relied on the same cases upon which this court relied in reversing appellant's conviction. *See Scillitani v. State,* 315 S.W.3d 542, 542 (Tex. Crim.App.2010) (per curiam). Because, in reversing the trial court's judgment, this court did not have the benefit of the Court of Criminal Appeals's opinion in *Kuciemba,* the high court vacated this court's judgment and remanded to this court for consideration in light of that opinion. *See id.*

### ISSUES AND ANALYSIS

**Is the evidence sufficient to support appellant's conviction for driving while intoxicated?**

 In his first issue, appellant claims that the evidence is legally and factually

insufficient to show that he drove the vehicle at the time he was intoxicated. In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

A majority of the judges of the Court of Criminal Appeals have determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010) (plurality op.) (Hervey, J., joined by Keller,

P.J., Keasler, and Cochran, J.J.); *id.* at 912–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as plurality). Therefore, in this case we will review the evidence only under the *Jackson v. Virginia* standard, as articulated in the preceding paragraph.

A person commits the offense of driving while intoxicated if that person operates a motor vehicle in a public place while intoxicated. TEX. PENAL CODE ANN. § 49.04(a) (West 2011). One is considered intoxicated if he does not have the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances or any other substance into the body or by having an alcohol concentration of 0.08 or more in his breath, blood, or urine. *See* TEX. PENAL CODE ANN. § 49.01(2)(A)-(B) (West 2011).

■ In light of appellant's admission that he was the driver of the vehicle, the evidence is sufficient to show that appellant was driving at the time of the accident. But there must be a temporal link between appellant's intoxication and appellant's driving. *See Kuciemba,* 310 S.W.3d at 462. A crucial issue in this appeal is what quantum of evidence would allow a rational trier of fact to find that the evidence establishes this temporal link beyond a reasonable doubt.

On remand, appellant relies upon the Court of Criminal Appeals's opinion in *Johnson v. State,* 517 S.W.2d 536 (Tex. Crim.App.1975), a case upon which this court relied in its opinion on original submission in the case under review. *See Scillitani,* 297 S.W.3d at 503. *In Johnson,* a police officer arrived at the scene of a single-vehicle accident[1] and found the ve-

---

1. The *Johnson* court stated that the investigating police officer "could not testify at what time the 'accident' occurred." *Johnson v.*

*State,* 517 S.W.2d 536, 538 (Tex.Crim.App. 1975). It is unclear why the *Johnson* court used quotation marks in this sentence.

hicle in a ditch on the side of the road. *See Johnson v. State*, 517 S.W.2d 536, 537 (Tex.Crim.App.1975). Nobody was in the vehicle, but there were several people nearby, one of whom admitted he was driving the vehicle when the accident occurred.[2] *See id.* Upon further investigation, the officer concluded that this person was intoxicated. *See id.* A test administered more than two-and-a-half hours after the officer arrived on the scene showed that the person had an alcohol concentration of .20 in his blood. *See id.* There was no direct evidence showing when the accident occurred. *See id.* at 537–38. On this record, the Court of Criminal Appeals concluded that (1) there was no evidence showing when appellant drove the vehicle; (2) there was no evidence of how recently the vehicle had been driven; and (3) there was no evidence that appellant was intoxicated when he drove the vehicle. *See id.* at 538. The *Johnson* court held the evidence was legally insufficient to support the conviction. *See id.*

We conclude that the Court of Criminal Appeals impliedly overruled *Johnson* in *Kuciemba*. *See Kuciemba*, 310 S.W.3d at 462–63. In *Kuciemba*, a police officer ar-

rived at the scene of a single-vehicle accident and found the vehicle in a ditch on the side of the road. *See id.* at 461. When the officer arrived a person was in the driver's seat of the vehicle, and that person had small cuts on his forehead and blood running down his face. *See id.* The officer detected the odor of alcohol on the driver's breath and determined that the driver was intoxicated. *See id.* The driver told the officer that he had fallen asleep. *See id.* But the driver told a paramedic that he had not lost consciousness, though he did not remember the accident. *See id.* The paramedic noticed a red strap mark across the driver's chest where his seat belt would have been. *See id.* There was testimony that (1) no alcoholic beverages or containers were found in the vehicle or at the scene, and (2) that no skid marks were found on the road, indicating that appellant did not brake before the accident. *See id.* Tests on blood drawn at the scene showed an alcohol concentration of .214. *See id.*

On appeal, this court held that the evidence was legally insufficient to support Kuciemba's conviction, relying upon sever-

---

Though our concurring colleague concludes that the court may have been skeptical that an accident had occurred, the *Johnson* court's opinion belies this notion. *See post* at p. 923, n. 1. The court stated as a fact that the police officer "arrived at the scene of an accident." *Id.* at 537. The court quoted testimony in which the officer described "the scene of the accident" as "a small, two-lane blacktop road." *Id.* The court quoted the officer's testimony during which he made a drawing of the "final resting place of the vehicle" and stated that he could not find anything on the road that would cause the vehicle to be in the ditch or to run into the pole. *Id.* The *Johnson* court did not state or suggest that appellant intentionally drove the vehicle into the ditch. *See id.* at 537–38.

2. Our concurring colleague concludes that the appellant in *Johnson* did not admit that he

was driving the vehicle when the accident occurred. *See post* at p. 923, n. 1. There were several people standing on the other side of the street, and the officer asked them, " 'Were one of you driving this vehicle?' " *Johnson*, 517 S.W.2d at 537. The appellant in *Johnson* answered " 'I was driving.' " *Id.* The *Johnson* appellant did not explicitly state that he was driving when the accident occurred. But when an officer investigating why a vehicle is in a ditch asks who was driving the vehicle, it is implied in the officer's question that he is asking who was driving the vehicle when it went into the ditch. The *Johnson* court concluded that the record contained no evidence of various matters, but it did not conclude that there was no evidence that the appellant was driving the vehicle when the accident occurred. *See id.* at 538.

al cases, including *Johnson.* *See Kuciemba v. State,* No. 14–08–00050–CR, 2009 WL 585978, at *3 (Tex.App.-Houston [14th Dist.] Mar. 10, 2009) (not designated for publication), *rev'd,* 310 S.W.3d 460 (Tex. Crim.App.2010).[3] The Court of Criminal Appeals granted review and reversed this court's judgment. *See Kuciemba,* 310 S.W.3d at 461. In *Kuciemba,* the Court of Criminal Appeals did not cite or discuss its prior opinion in *Johnson. See id.* at 462–63. Nonetheless, the high court in *Kuciemba* concluded that a person's intoxication at the scene of an accident in which the person was driving a vehicle is some circumstantial evidence that the person was driving while intoxicated. *See id.* at 462. The *Kuciemba* court further stated that (1) the inference that the driver was intoxicated is even stronger when the accident is a one-vehicle collision with an inanimate object; (2) a driver's failure to brake also is some evidence that the driver was intoxicated; (3) a person's presence in the driver's seat, still bleeding, supports an inference that the accident had occurred a short time previously; and (4) a high blood alcohol level in blood taken at the accident scene supports an inference either that the driver was recently involved in the accident or that he had been intoxicated for quite a while. *See id.* at 462–63. The *Kuciemba* court concluded that the combination of these facts was sufficient to support appellant's conviction for driving while intoxicated. *See id.* at 463.

The *Kuciemba* court also cited with approval an opinion of the Supreme Court of Nebraska. *See id.* at 462–63 (citing *State v. Blackman,* 254 Neb. 941, 580 N.W.2d 546 (1998)). In this Nebraska case, the court held that the evidence was legally sufficient to support a finding that the defendant was intoxicated while driving based only upon an inference drawn from the driver's intoxication at the scene at a single-vehicle accident. *See Blackman,* 580 N.W.2d at 547–48, 550–51.

In *Kuciemba,* the Court of Criminal Appeals did not expressly overrule or disapprove of its prior opinion in *Johnson. See Kuciemba,* 310 S.W.3d at 462–63. But the *Johnson* court held that being intoxicated at the scene of a traffic accident in which the defendant was the driver was no evidence the defendant was driving while intoxicated. *See id.* In contrast, the *Kuciemba* court held that being intoxicated at the scene of a traffic accident in which the defendant was a driver is some evidence the defendant was driving while intoxicated. *See Kuciemba,* 310 S.W.3d at 462. Because the analysis in *Kuciemba* is contrary to the analysis in *Johnson,* we conclude that the *Kuciemba* court impliedly overruled *Johnson.*[4] *Compare id., with Johnson,* 517 S.W.2d at 538. Therefore, we cannot rely upon *Johnson* on remand.

Appellant asserts that the legal-sufficiency analysis in the case under review should be different than the legal-sufficiency analysis in *Kuciemba* because the evidence in the two cases is materially different. The evidence in the case under review is different from the evidence in *Kuciemba* in the following respects: (1) appellant was not found inside the vehicle; (2) there is no evidence that appellant was

---

3. This court's opinion on original submission in *Kuciemba* was not designated for publication, and this opinion does not have any precedential value. *See* Tex.R.App. P. 47.7(a).

4. Our concurring colleague distinguishes the facts of *Kuciemba* from the facts of *Johnson,* stating that in *Johnson* there was no admission as to loss of control and no description of how or why the vehicle ended up in the ditch. *See post* at p. 924. But there was no admission of loss of control in *Kuciemba,* nor was there a description of how or why the vehicle ended up in the ditch. *See Kuciemba,* 310 S.W.3d at 461–63.

bleeding or had sustained a recent injury; (3) there is no evidence that appellant had a strap mark across his chest where his seat belt would have been; (4) the alcohol concentration in appellant's breath was not twice the legal limit; and (5) there is no evidence as to whether alcoholic beverages or containers were found in appellant's vehicle or at the scene.

Based on these differences, the case under review does not fall completely within the holding in *Kuciemba*. Nonetheless, the *Kuciemba* court held that a person's intoxication at the scene of an accident in which the person was driving a vehicle is some circumstantial evidence that the person was driving while intoxicated. *See Kuciemba*, 310 S.W.3d at 462. The *Kuciemba* court also stated that the inference that the driver was intoxicated is even stronger when the accident is a single-vehicle collision with an inanimate object. *See id.* The case under review involves a single-vehicle collision with a fence pole. The *Kuciemba* court also stated that the absence of skid marks on the road indicated that appellant did not apply the brakes. *See id.* at 461. The *Kuciemba* court concluded that a driver's failure to brake is some evidence that the accident was caused by intoxication. *See id.* at 463.

Though the *Kuciemba* court also relied upon other evidence that is not present in the case under review, the high court cited with approval the *Blackman* case from Nebraska. *See Kuciemba*, 310 S.W.3d at 462–63. In *Blackman*, the court held that the evidence was legally sufficient to support a finding that the defendant was intoxicated while driving based only upon an inference drawn from the driver's intoxi-cation at the scene of a single-vehicle accident. *See Blackman*, 580 N.W.2d at 547–48, 550–51. As in the case under review, in *Blackman* (1) the defendant was not found in or on the vehicle; [5] (2) there was no evidence that the defendant was bleeding or had sustained a recent injury; [6] (3) there was no evidence the defendant had a strap mark across his chest where his seat belt would have been; (4) there was no evidence that the engine in the defendant's vehicle was still warm or was running when the officer arrived, (5) the alcohol concentration in defendant's breath was not twice the legal limit; and (6) there is no evidence as to whether alcoholic beverages or containers were found in defendant's vehicle, at the scene, or on the defendant's person. *See id.* Based upon the guidance provided by the *Kuciemba* court, we conclude that, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. §§ 49.01(2)(A)-(B), 49.04(a); *Kuciemba*, 310 S.W.3d at 462–63. Accordingly, we overrule appellant's first issue.

**Did the trial court err in denying appellant's motion to suppress?**

In his second issue, appellant contends that the trial court erred in denying his motion to suppress evidence of the breath test results. We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). At a hearing on a

---

**5.** In *Blackman*, the vehicle was a motorcycle. *See Blackman*, 580 N.W.2d at 547–48.

**6.** When the police officer arrived at the scene, the defendant was lying on the ground and was not moving. *See Blackman*, 580 N.W.2d

at 548. When the officer asked the defendant a question, he did move and responded to the officer's question. *See id.* The defendant insisted that he could still ride his motorcycle. *See id.*

motion to suppress, the trial court is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We afford almost complete deference to the trial court's determination of historical facts supported by the record, as well as to mixed questions of law and fact dependent on the determination of a witness's credibility and demeanor. *See State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000). We consider issues that present purely legal questions under a de novo standard. *See id.*

The Court of Criminal Appeals has held that, when evidence of alcohol concentration, as shown by the results of analysis of breath specimens taken at the request or order of a peace officer, is offered in the trial of a driving-while-intoxicated offense, (1) the underlying scientific theory has been determined by the legislature to be valid; (2) the technique applying the theory has been determined by the legislature to be valid when the specimen was taken and analyzed by individuals who are certified by, and were using methods approved by the rules of, the Texas Department of Public Safety; and (3) the trial court must determine whether the technique was properly applied in accordance with the department's rules, on the occasion in question. *See Reynolds v. State,* 204 S.W.3d 386, 390–91 (Tex.Crim.App.2006) (applying standard in *Kelly v. State,* 824 S.W.2d 568, 572 (Tex.Crim.App.1992) to breath-test results). Appellant limits the scope of his second issue to this third prong, claiming that Trooper Hackney did not properly conduct appellant's breath test on the Intoxilyzer in accordance with regulations set forth by the Department of Public Safety because he did not verify the temperature of a reference sample.

The Department of Public Safety is authorized in the Texas Transportation Code to "adopt rules approving satisfactory analytical methods." TEX. TRANSP. CODE ANN. § 724.016(b)(1) (West 2011). The Department of Public Safety has set forth the requirements for breath-alcohol-testing procedures in the Texas Administrative Code. *See* 37 TEX. ADMIN. CODE § 19.4(c) (2011) (Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs). As pertinent in the case under review, the regulations require that all approved breath-alcohol testing techniques include the following:

> The analysis of a reference sample, the results of which must agree with the reference sample predicted value within plus or minus 0.01g/210 L, or such limits as set by the scientific director. This reference analysis shall be performed in conjunction with subject analyses.

*Id.* § 19.4(c)(4).

■ A presumption of admissibility applies when the procedures prescribed by the Department of Public Safety are followed. *Reynolds,* 204 S.W.3d at 390; *Stevenson v. State,* 895 S.W.2d 694, 696 (Tex. Crim.App.1995); *see also Mireles v. Tex. Dep't of Pub. Safety,* 9 S.W.3d 128, 131–32 (Tex.1999) (concluding the Texas Legislature has recognized the scientific theory and technique behind the breath tests and prescribed the procedures to use). Appellant claims that Trooper Hackney did not follow the Department of Public Safety procedures based on the trooper's testimony that he did not check the reference sample temperature.

The record reflects that appellant's Intoxilyzer test was administered by Trooper Hackney, who is certified to operate the machine by the Department of Public Safety. Trooper Hackney testified that, believing the machine checked the temperature, before administering the test to ap-

pellant he did not check the temperature of a reference sample on the Intoxilyzer. He conducted a diagnostic test on the Intoxilyzer, which did not identify or indicate any invalid conditions; then appellant gave two breath samples, taken three minutes apart. The Intoxilyzer did not indicate any malfunction.

Alva Barbosa, a forensic scientist and technical supervisor familiar with the Intoxilyzer, testified at first that Trooper Hackney, in failing to check the temperature of the reference sample, did not conduct the test in accordance with the Texas Breath and Alcohol Testing regulations. Despite this hearing testimony, Barbosa later testified that the current regulations no longer require that the reference sample be taken at a known temperature and that Trooper Hackney administered the test in accordance with regulations. Barbosa attributed her prior testimony—that the test was not in compliance with regulations—to a lapse in memory given that the regulations had been revised several months before appellant's test.

For support that Trooper Hackney did not properly administer the test, appellant refers to testimony about a user's manual for the Intoxilyzer, which sets forth the required temperature for the reference sample. We consider whether Trooper Hackney applied the proper technique in accordance with rules promulgated by the Department of Public Safety in administering the test. See Reynolds, 204 S.W.3d at 390. Although a previous code provision required that the sample mixture be maintained at a known temperature, that provision has been deleted. See 30 Tex. Reg. 5729–30 (2005) (codified at 37 Tex. Admin. Code §§ 19.1–19.7) (Tex. Dep't Pub.

Safety) (providing that sections 19.1 through 19.7 of the Administrative Code were substantially revised, such that 19.3(c)(4) became 19.4(c)(4)). Under the current provision, the known temperature requirement no longer applies. See 37 Tex. Admin. Code § 19.4(c).

Barbosa also testified that the test results were not invalid. According to Barbosa, if the machine had detected any invalid condition, the test would have been discontinued and the test would have been invalidated. Barbosa testified, as pertinent to the reference sample, the Intoxilyzer will continue to perform a test so long as the reference sample solution is within a tolerance of .010 of the predicted alcohol concentration. Barbosa explained that there is no indication that the reference sample temperature was out of the acceptable tolerance range when the test was administered to appellant.[7] Barbosa testified that because the reference sample was within the prescribed tolerance range when appellant submitted his breath samples, the Intoxilyzer allowed the test to continue, and the results were valid.

The evidence in the record establishes that the readings produced by the Intoxilyzer were obtained in conformity with procedures prescribed in the governing regulations. The regulations do not require a known temperature for the reference sample. See 37 Tex. Admin. Code § 19.4(c). Therefore, the breath-test results were admissible, and the trial court did not err in denying appellant's motion to suppress. We overrule appellant's second issue.

The trial court's judgment is affirmed.

CHRISTOPHER, J., concurring.

---

**7.** Appellant points to evidence that the next test administered on that machine four days later yielded an indication of a "reference fail." But, Barbosa testified that the invalid test in that instance could have been attributed to the environment or any "number of things"; she did not know and did not testify that the reference sample, itself, caused the failure.

TRACY CHRISTOPHER, Justice, concurring on remand.

I join the majority in its analysis and disposition of appellant's challenge to the trial court's denial of his motion to suppress evidence of his breath-test results. I nevertheless concur with the majority's judgment because I respectfully disagree with its conclusion that the Court of Criminal Appeals, through its decision in *Kuciemba v. State,* 310 S.W.3d 460 (Tex.Crim. App.2010), impliedly overruled *Johnson v. State,* 517 S.W.2d 536 (Tex.Crim.App. 1975).

*Kuciemba* and *State v. Blackman,* 254 Neb. 941, 580 N.W.2d 546 (1998), on which the Court of Criminal Appeals relied, differ significantly from *Johnson* both in the admissions of the defendant drivers and the descriptions of the accidents. In *Johnson,* the defendant driver's only admission was "I was driving." 517 S.W.2d at 537. The police officer described the two-lane road, the ditch on the side of the road, the vehicle's position in the ditch, and the vehicle's westward direction of travel. There was no testimony as to how the vehicle came to be in the ditch or even whether the vehicle was damaged.[1] *Id.* at 537–38. The court concluded,

> In this case there is no evidence that the ditch where the pickup was standing was in the street right-of-way. There is no evidence that the tracks made by the pickup truck came from the direction of the street ... or that a trail or water leaking from the radiator came from the direction of the street.... Also, there is no evidence showing when the appellant drove the pickup truck. There was no evidence of how recently the truck had

been driven such as evidence that the engine was still hot.... There is no proof that the appellant drove at the time he was intoxicated.

*Id.* at 538 (citations omitted).

In *Kuciemba,* the defendant driver stated that he had fallen asleep. He also stated that he did not lose consciousness but also did not remember the accident. 310 S.W.3d at 461. The police officer testified that he arrived to find a pickup truck in a ditch. The truck was upright on its wheels but the roof was partially crushed, indicating that the vehicle had completely rolled over. The defendant was in the truck and he was bleeding. *Id.* The court concluded, "Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Id.* at 462.

In *Blackman,* the defendant driver admitted that he had been operating his motorcycle on a county road immediately before he lost control and landed in the ditch. 580 N.W.2d at 548. The police officer testified that he was notified that a motorcycle was in a ditch. He arrived at the scene 15 to 20 minutes later and found the defendant lying unmoving in the ditch. *Id.* The court concluded, "It can reasonably be inferred that the deputy found [the defendant] where he had come to rest after losing control of his motorcycle and that [the defendant's] state of intoxication existed when he last operated the motorcycle on the county road." *Id.* at 551.

---

1. In fact, it appears that court was skeptical that an accident had happened. The court used quotation marks in the following sentence: "The officer said he could not testify at what time the 'accident' occurred." *Id.* at

538. Certainly the driver did not admit that he was driving "when the accident occurred" as stated in the majority opinion. *See ante,* at 917.

In *Kuciemba,* the defendant made contradictory admissions as to how the accident happened. In *Blackman,* the defendant admitted that he lost control of his vehicle. But in *Johnson,* there was no admission as to loss of control, nor any description of how or why the truck ended up in the ditch.

In the case before us, appellant admitted that he did not know how he lost control of his vehicle and ended up in a ditch. The police officer testified that based upon his investigation of the accident, appellant drove off the side of the road and struck a fence pole because he had been drinking and drove on wet roads at an unsafe speed.

The facts of this case are similar to both *Kuciemba* and *Blackman* and different from *Johnson.* We can affirm this conviction without holding that *Kuciemba* has impliedly overruled *Johnson.* Because the majority does so, I can only concur in the judgment.