**Affirmed and Memorandum Opinion filed August 30, 2012.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-11-00863-CR
_____

**CHRISTOPHER LEE WEBER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 12
Harris County, Texas
Trial Court Cause No. 1644822**

---

## MEMORANDUM OPINION

Appellant Christopher Lee Weber appeals his conviction for driving while intoxicated, asserting that the trial court erred in denying his motion to suppress the results of a breath test. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by information with the offense of driving while intoxicated. Appellant filed a pre-trial motion to suppress all evidence, namely a breath test taken from appellant at the police stationhouse following an automobile accident.

At a hearing on appellant's motion, Julio Rincones testified that he was a peace officer certified to operate the Intoxilyzer 5000, a breath-test machine, and administered a breath test to appellant using the machine. Rincones claimed to have observed appellant for fifteen minutes before administering the test to ensure that no foreign objects were introduced into appellant's mouth to affect the outcome of the test; Rincones also inspected appellant's mouth to confirm he had nothing inside his mouth. Rincones testified that he checked the temperature for the reference sample and that it was within an allowable range. A circuit check of the machine gave an "okay" result. During a routine test, two samples are given; an acceptable variance between the two samples is 0.02 grams based on 210 liters of breath. Appellant's test results, as reflected by the breath-test strip, showed 0.197 grams of alcohol per 210 liters of breath for the first sample and 0.196 grams of alcohol per 210 liters of breath for the second sample. Based on the these test results, Rincones formed the opinion that appellant was intoxicated. Although Rincones is a certified operator of the Intoxilyzer 5000, he is not qualified to testify about the underlying theory and science of the machine.

Marianela Martinez is a state-certified breath technical supervisor who supervises and maintains the same machine that Rincones used to administer the breath test to appellant. In addition to her college education, Martinez holds a certification from the completion of courses to operate, repair, and maintain the Intoxilyzer 5000. She explained that the underlying scientific theory of the Intoxilyzer 5000 is based on infrared spectroscopy in which the machine measures light intensity in a breath sample. In the scientific community, the theory is considered valid.

2

Martinez testified that she personally inspects the machine on-site once a month and remotely monitors the machine by modem or computer once or twice a week or every two weeks. During this remote monitoring, Martinez's computer connects with the machine and conducts a diagnostic check of voltages, readings, and internal standards and a calibration check to ensure the reference sample is within a tolerance range.

Prior to the test administered to appellant on November 29, 2009, Martinez and another certified technical supervisor with the same qualifications, Lee Anne Spino, last checked the machine on-site and changed the reference sample solution on November 18, 2009. On that date, Martinez and Spino engaged in a "sign-over" in which Spino, who had temporarily supervised the machine, signed over her supervision of the machine to Martinez's supervision, and then they conducted tests on the machine to ensure it functioned properly. Martinez testified that Spino mixed the reference sample solution at a remote location, Martinez poured the solution into the machine, and, together, the two ran a test and verified the accuracy of the solution. The machine produced two slips for Martinez's and Spino's respective signatures indicating that both were on-site changing the reference sample solution. According to Martinez, the machine functioned properly following the tests and required no repairs either during her on-site check on November 18, 2009, or during a subsequent on-site check on December 23, 2009.

Martinez testified that the reference sample solution is sent to an agency in Austin, Texas, once or twice a year to ensure that the concentration of the solution was made within the appropriate parameters; according to Martinez, there was nothing wrong with the particular reference sample used in administering appellant's test. Martinez did not have records to prove that the reference solution was independently verified in this case; however, during her remote monitoring of the machine, the calibration check reflected that the reference sample was within the appropriate tolerance range.

Martinez testified that before appellant's breath test, she had never personally calibrated that particular machine, although she believed she had reviewed the calibration

3

records associated with that particular machine. The record contains no calibration records on the machine, and Martinez was unable to produce them to appellant's counsel under subpoena. Martinez testified that even without records of the machine's calibrations, the machine had to have been calibrated properly and certified by the Texas Department of Public Safety before the machine could be released into her supervision.

Martinez inspected the breath-test strip from appellant's breath test. She noted that it reflects the result of the reference analysis, which was within the predicted tolerance value. According to Martinez, the test would be invalidated in any of the following scenarios:

- If the reference sample were outside of the predicted tolerance range,

- If the first sample breath resulted in a much higher reading than the second sample, resulting in residual alcohol,

- If the machine were unable to return to the same baseline reading detected before the beginning of the test, or

- If a sample were not provided properly or at the wrong time.

Martinez testified that the machine conducts all functions automatically and that the operator, who simply pushes one button, is incapable of influencing the test results. According to Martinez, the scientific technique was properly applied in this case.

Appellant testified that he consumed three alcoholic beverages between 10:00 a.m. and 11:30 a.m. on November 29, 2009. He was later involved in an automobile accident; officers responded to the scene and administered field-sobriety tests to appellant. Appellant claimed to have possibly dropped his foot several times during a field-sobriety test involving a one-leg stand. Appellant claimed to have possibly leaned against a wall for support during a walk-and-turn field-sobriety test. Appellant admitted to having to restart his recitation of the alphabet at least once and again during a recitation of numbers in a field-sobriety test. Appellant was arrested around 6:40 p.m.

4

and transported to the police station, which was a few minutes' drive from that location. Appellant claims that, at the stationhouse following his arrest, Rincones spent only a few minutes with him before conducting the breath test; but, appellant also acknowledged that Rincones could have spent longer than fifteen minutes observing him.

The trial court denied appellant's motion to suppress. Appellant then entered a plea of "guilty" to the charged offense. After finding appellant guilty, the trial court sentenced appellant to 180 days' confinement in a county jail, probated for one year, and assessed a fine.

### ISSUES AND ANALYSIS

In a single issue, appellant challenges the trial court's denial of the motion to suppress the breath-test results, asserting that the scientific technique in administering the breath test to appellant was not properly applied. Appellant asserts his Sixth Amendment right to confront his accusers was violated because the State failed to present an expert scientific witness to testify about the calibration of the Intoxilyzer 5000 machine and the reference sample to show that the machine was working properly. Appellant also asserts that he was denied due process as a result of the State's failure to produce an expert witness with knowledge of the machine's calibrations. Appellant relies on the case of *Bullcoming v. New Mexico*, —U.S. —, —, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011), which addresses both arguments.

We review a trial court's ruling on a motion to suppress under an abuse-of discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Scillitani v. State*, 343 S.W.3d 914, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). At a hearing on a motion to suppress, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Scillitani*, 343 S.W.3d at 921. We afford almost complete deference to the trial court's determination of historical facts supported by the record, as well as to mixed questions of law and fact dependent on the

5

determination of a witness's credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Scillitani*, 343 S.W.3d at 921. We consider issues that present purely legal questions under a de novo standard. *See Ross*, 32 S.W.3d at 856; *Scillitani*, 343 S.W.3d at 921.

When evidence of alcohol concentration, as shown by the results of analysis of a breath specimen taken at the request or order of a peace officer, is offered (1) the underlying scientific theory must be determined by the legislature to be valid; (2) the technique applying the theory has been determined by the legislature to be valid when a specimen was taken and analyzed by individuals who are certified by, and were using methods approved by, the Texas Department of Public Safety; and (3) the trial court must determine whether the technique was properly applied in accordance with the department's rules on the occasion in question. *See Reynolds v. State*, 204 S.W.3d 386, 390–91 (Tex. Crim. App. 2006 (applying standard in *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) to breath-test results). By statute, the Texas Legislature has recognized the validity of the scientific theory and the technique behind the Intoxilyzer, as reflected in the first two prongs. *See* Tex. Transp. Code Ann. § 724.064 (West 2011); Tex. Transp. Code Ann. § 724.016 (West 2011); *Stevenson v. State*, 895 S.W.2d 694, 696 (Tex. Crim. App. 1995). Appellant challenges only the third prong, pointing to Martinez's testimony that she had no personal, first-hand knowledge of the calibration of the Intoxilyzer 5000, in ascertaining whether the scientific technique was properly applied during appellant's breath test. Appellant also refers to Martinez's testimony that she did not personally mix the reference sample solution or independently verify the accuracy of the solution's concentration.

An expert witness may base an opinion or inference on facts or data perceived by, reviewed by, or made known to the expert before testifying. *See* Tex. R. Evid. 602; Tex. R. Evid. 703. Appellant does not challenge Martinez's expert qualifications; rather, appellant claims that Martinez lacked personal, first-hand knowledge of the machine's

calibrations and the preparation of the reference sample. Although appellant asserts that Martinez was "wholly unfamiliar with the machine" used to administer the breath test to appellant, the record reflects that Martinez received extensive training specific to the Intoxilyzer 5000, and had served as a certified technical supervisor for nearly a decade, and had worked specifically with Harris County. She began supervision of the specific machine used in appellant's breath test on November 18, 2009.

The record reflects that Martinez had personal knowledge of Spino's certification as a technical supervisor. *See Henderson v. State*, 14 S.W.3d 409, 412 (Tex. App.—Austin 2000, no pet.). According to the record, on November 18, 2009, although Spino prepared the reference sample solution outside of Martinez's presence, Martinez, herself, poured the reference sample solution into the chamber of the machine. *See id.* (involving an expert witness technical supervisor who testified about a reference sample solution prepared by a different technical supervisor). Together, the two technical supervisors conducted tests on the machine to ensure it functioned properly and verified the accuracy of the solution. Had the solution been improperly formulated, the machine would have indicated "out of tolerance" and would have invalidated the breath test. According to Martinez, the machine functioned properly following these tests and again on December 18, 2009, when she next checked the machine on-site, without the need for maintenance or repairs in the interim. Martinez testified that if the reference sample is not within the accepted tolerance range, the test would be invalidated and "can't be run." Based on the fact that the machine was functioning properly at the on-site check prior to appellant's test and at the December on-site check after appellant's test, Martinez opined that the machine was functioning properly during appellant's test.

Likewise, Martinez also stated that during her remote monitoring of the machine, the diagnostic check of the machine's calibrations reflected that the reference sample was within the appropriate tolerance range. Although Martinez did not personally calibrate the machine or have records of the calibration history prior to November 18, 2009, she

testified that the machine would not have been released into her supervision if it had not been properly calibrated and certified for use by the State.

Appellant contends that, because Martinez had no first-hand knowledge about the calibration of the machine and could not produce records of the machine's calibration history, the admission of the breath-test results violated appellant's right to confrontation. The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Testimonial, out-of-court statements are not admissible unless it is shown that the declarant is unavailable to testify and the accused had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004).

Appellant cites to *Bullcoming* for the proposition that "any and all analytical, scientific data that the State intends to use at trial must be presented to the defense by a person who authored the data." *See* 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). In *Bullcoming*, the Supreme Court of the United States addressed the issue of "surrogate testimony" for a forensic report that established an element, intoxication, of the charged offense; the report was deemed testimonial. *See id.*, 131 S. Ct. at 2713, 2715–18. While the calibration history of the Intoxilyzer machine in this case may be relevant to the foundation for the admissibility of the breath-test results, documents prepared in the regular course of equipment maintenance may be non-testimonial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 2532 & n.1, 174 L. Ed. 2d 314 (2009) (declining, expressly, to hold that anyone whose testimony that may be relevant to establishing the chain of custody, authenticity of a sample, or accuracy of a testing device must appear in person). Testimony of a supervisor about the maintenance and upkeep of the machine does not amount to a violation of appellant's right of confrontation, as such records are not testimonial. *See id.*; *see also Settlemire v. State*, 323 S.W.3d 520, 522 (Tex. App.—Fort Worth 2010, pet. ref'd) (noting that testimony of "technical analysts

who calibrate and operate equipment," such as a technical supervisor in charge of Intoxilyzer machine, was admissible for purposes of maintenance records even though the supervisor was not in charge of the machine when the accused was arrested); *Henderson*, 14 S.W.3d at 412–13.

Given Martinez's testimony, we cannot conclude the trial court abused its discretion in denying appellant's motion to suppress. *See Henderson*, 14 S.W.3d at 412–13 (providing that trial court did not err in denying motion to suppress breath-test results when technical supervisor testified about a reference sample prepared by a different technical supervisor, who, at the time, was supervising the machine); *see also Settlemire*, 323 S.W.3d at 522 (providing trial court did not err in admitting evidence of breath-test results into evidence at trial when technical supervisor, who was not in charge of Intoxilyzer machine at time of an accused's arrest, testified about the maintenance records of Intoxilyzer machine). We overrule appellant's sole issue.

The trial court's judgment is affirmed.

/s/  Kem Thompson Frost
    Justice

Panel consists of Justices Frost, McCally, and Mirabal.[*]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[*]Senior Justice Margaret Garner Mirabal sitting by assignment.