**Affirmed and Substitute Memorandum Opinion on Remand filed October 25, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-08-00050-CR

**JULIAN KUCIEMBA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Cause No. 07-455**

## SUBSTITUTE MEMORANDUM OPINION ON REMAND

We overrule the motion for rehearing, withdraw our memorandum opinion on remand dated June 30, 2011, and issue the following substitute memorandum opinion on remand.

This appeal arises from appellant's conviction for driving while intoxicated and comes to us on remand from the Court of Criminal Appeals of Texas. *See Kuciemba v. State*, 310 S.W.3d 460 (Tex. Crim. App. 2010). The sole issue on remand concerns appellant's contention that the trial court erred by admitting the results of a blood serum

test performed on a blood sample taken from appellant. We affirm.

## BACKGROUND

Washington County Sheriff's Deputy Jonathan Prior responded to a dispatch call concerning a one-vehicle rollover accident on December 19, 2006. He arrived at the scene to find a pickup truck upright on its wheels in a ditch; the roof was partially crushed, indicating that the pickup had rolled over. *See id*. at 461. Deputy Prior saw appellant behind the wheel, after which appellant slid across the center console of the pickup and exited on the passenger side. *Id*. Appellant had small cuts on his forehead and was bleeding. *Id*. Deputy Prior smelled a strong odor of alcohol on appellant's breath and observed that appellant had to steady himself on his vehicle. *Id.* Deputy Prior observed that appellant's eyes were glassy and bloodshot; he had difficulty standing and his speech was slurred. *Id*. Appellant claimed he had fallen asleep. *Id*.

No alcoholic beverages or containers were found in the pickup or at the scene. *Id*. There were no skid marks on the roadway. *Id*.

Paramedics arrived about three minutes after Deputy Prior and placed appellant into an ambulance. *Id*. Paramedic David Zeiders smelled alcohol but was not sure whether the odor emanated from appellant's breath or his person. *Id*. Zeiders observed cuts on appellant's face and hands, and a red strap mark across appellant's chest. *Id*. Appellant said he did not lose consciousness but did not remember the accident. *Id*. Zeiders drew blood from appellant before the ambulance departed for the hospital. *Id*. A blood alcohol level of .214 was measured when the sample drawn from appellant was tested at the hospital. *Id*.

A jury convicted appellant of driving while intoxicated; he was sentenced to 180 days in jail, probated for 18 months, and a $750 fine. *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2011). On appeal, appellant raised two issues challenging (1) the legal sufficiency of the evidence to support his conviction for driving while intoxicated; and (2) the admissibility of the blood test results.

2

This court reversed on grounds that legally insufficient evidence established the necessary temporal link between appellant's driving and his intoxication. *Kuciemba v. State*, No. 14-08-00050-CR, 2009 WL 585978, at *2-3 (Tex. App.—Houston [14th Dist.] March 10, 2009) (mem. op., not designated for publication), *rev'd*, 310 S.W.3d 460 (Tex. Crim. App. 2010). This court cited and relied upon *Johnson v. State*, 517 S.W.2d 536, 538 (Tex. Crim. App. 1975); *Stoutner v. State*, 36 S.W.3d 716, 721 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); and *Weaver v. State*, 721 S.W.2d 495, 498-99 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). *See Kuciemba*, 2009 WL 585978, at *2-3. In light of this disposition, we did not address appellant's second issue.

The Court of Criminal Appeals reversed and held that the evidence was legally sufficient to support appellant's conviction for driving while intoxicated. *Kuciemba*, 310 S.W.3d at 462-63. It quoted and cited with approval the analysis in a case decided by the Supreme Court of Nebraska. *Id*. at 463 (citing *State v. Blackman*, 580 N.W.2d 546, 550-51 (Neb. 1998)). The Court of Criminal Appeals did not discuss or cite its prior opinion in *Johnson*. *See id*. at 462-63; *see also Scillitani v. State*, 297 S.W.3d 498, 503-05 (Tex. App.—Houston [14th Dist.] 2009) (Hudson, J., concurring), *vacated and remanded*, 315 S.W.3d 542 (Tex. Crim. App. 2010); *Scillitani v. State*, 343 S.W.3d 914, 919-20 (Tex. App.—Houston [14th Dist.] 2011, pet. filed).

The Court of Criminal Appeals remanded the case with instructions to address appellant's remaining appellate issue concerning admissibility of the blood serum test results.

## ANALYSIS

Appellant contends that the trial court should have excluded the hospital's blood serum test results from evidence because (1) the manufacturer of the hospital's testing machine designated that it was to be used for therapeutic rather than forensic purposes; (2) the State failed to establish reliability of the results as required under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), and Texas Rule of Evidence 702; (3) the blood sample was

3

contaminated during a gap in the chain of custody; and (4) the test was performed on blood serum instead of whole blood. We review a trial court's ruling on a challenge to the admission of evidence for abuse of discretion. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

As a threshold matter, we note appellant's additional contention on remand that "[t]he evidence is legally insufficient to sustain a conviction for DWI because the trial court should have excluded the evidence of the blood serum test results performed by Trinity Hospital." We reject this legal sufficiency contention because "*all* evidence admitted at trial — including improperly admitted evidence — is considered in a legal sufficiency review." *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (original emphasis). Indeed, the Court of Criminal Appeals already has relied upon the blood serum test results at issue in concluding that the record contains legally sufficient evidence to support appellant's conviction. *See Kuciemba*, 310 S.W.3d at 463 ("Finally, the high-blood alcohol level — more than twice the legal limit — found in a sample taken at the scene, supports an inference either that appellant was recently involved in the accident or that he had been intoxicated for quite a while. The combination of these facts is sufficient to support appellant's conviction for driving while intoxicated.").

Turning to the admissibility inquiry, this record demonstrates that appellant objected to the admission into evidence of a blood vial marked as State's Exhibit 1 that was proffered during the direct testimony of Sylvia Waxler, a medical technologist with Trinity Medical Center whose duties encompass collection, handling, and analysis of human body fluids. Waxler was on duty when appellant was brought to Trinity Medical Center after the accident. Waxler testified that the label on State's Exhibit 1 identifies it as containing a sample from appellant drawn on the night of the accident, and that she tested the sample. Appellant objected to admission of State's Exhibit 1 on grounds that "[t]here's no chain of custody according to what the law requires." The trial court admitted State's Exhibit 1 over appellant's objection.

4

Waxler testified further during direct examination regarding the contents of Defendant's Exhibit 5, entitled "Trinity Community Medical Laboratory Patient Laboratory Report" and dated December 19, 2006. The "patient" on this laboratory report is identified as "Kuciemba, Julian Paul." Waxler testified as follows regarding the contents of Defendant's Exhibit 5.

> Q. I'll ask you to read under alcohol. It has a result and what was that result?
>
> A. 214.
>
> Q. What is that 214?
>
> A. That is milligrams per deciliter. That's the amount of alcohol that was in this sample at the time.
>
> Q. Okay. And if we were to convert that 214 into a blood alcohol content, what would that be?
>
> A. I believe it would be .214.
>
> Q. Okay. So if the legal intoxication limit in the state of Texas is .08, .214 would be way over that legal limit, correct?
>
> A. Yeah. If you were to convert the .08 then to milligrams per deciliter it would be 80. So if you're comparing 80 as being a normal or a legal, then 214 is elevated.

Following this testimony, the State offered Defendant's Exhibit 5 into evidence. Appellant then objected to the admission of Defendant's Exhibit 5 on grounds that "[t]he predicate hasn't been laid." Appellant also objected because "[t]here has not been a chain of custody on the sample and the machine is not shown to be reliable based on the *Daubert v. Robinson* protocol." The trial court admitted Defendant's Exhibit 5 into evidence over appellant's objection.

An objection to blood test results lodged after the results were previously discussed is not effective to preserve an admissibility challenge. *See French v. State*, No. 05-99-01015-CR, 2000 WL 102719, at *1 (Tex. App.—Dallas Jan. 31, 2000, no pet.) (not designated for publication) ("[A]lthough appellant objected when the blood test documents were finally offered into evidence and later raised untimely objections to Forrester's testimony, he failed to object to Forrester's testimony of the testing results at

5

the time such evidence was presented.") (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *see also* Tex. R. App. P. 33.1(a)(1); *Davis v. State*, 313 S.W.3d 317, 352 (Tex. Crim. App. 2010) ("Ordinarily, an objection is required to preserve error for review" when appellant contends that a witness employed an unreliable methodology.).

Appellant contends on rehearing that his appellate complaints regarding admissibility of the hospital's blood test results were preserved when the trial court denied his pretrial Motion to Suppress Unauthorized Taking of Blood Specimen and Blood Alcohol Test. The motion was filed on or about October 11, 2007 and denied in a written order signed on November 26, 2007. The trial was conducted on January 14 and 15, 2008.[1]

In his October 2007 motion, appellant asked the trial court to suppress the blood specimen and the hospital's blood test results on grounds that

(1)     a Washington County paramedic took appellant's blood at the accident scene without a warrant, a court order, appellant's consent, or appellant's knowledge;

(2)     this conduct violated the "Standing Protocols of the Washington County EMS;"

(3)     this conduct was undertaken "at the special instance, or urging, or

---

[1] Appellant filed a separate Motion to Suppress Blood Alcohol Test on July 2, 2007, in which he challenged the admissibility of a different blood test conducted by the Texas Department of Public Safety. After a hearing, the trial court signed an agreed order on October 4, 2007, stating that "the DPS blood alcohol test results done on the Defendant's blood shall not be used, or admitted, or referred to in this case." As reflected in this order, the State announced in court that "the State will not use the DPS blood test in this case, and the State shall not offer such blood alcohol test in evidence in the case for any purpose." The DPS test results were not offered at trial and do not affect the analysis on appeal. Also on July 2, 2007, appellant filed a Motion to Determine Admissibility of Expert Opinions of State's Witnesses. The proposed order accompanying the motion to determine admissibility is not signed, and there is no indication in the record that the trial court (1) conducted the requested hearing; or (2) ruled on the motion to determine admissibility. The appellate record contains no indication that a hearing to determine the admissibility of expert testimony proffered by the State was conducted before or during trial with respect to the hospital blood test results. No such hearing transcript is part of the record on appeal.

request of law enforcement officers or by a tacit understanding between EMS and law enforcement" to assist with "a possible DWI prosecution" rather than to "treat the defendant for any condition, injury, or illness;"

(4)     use of the blood specimen and test results under these circumstances is "unauthorized, illegal, and a violation of defendant's medical privilege and the defendant's right to privacy;"

(5)     "the alcohol blood test Trinity Medical Center allegedly performed on the defendant's blood specimen should be suppressed because it is unreliable and fails to meet the requirements of Daubert v. Robinson and Mirecles v. State;"[2]

(6)     the blood specimen "was contained in improper test tubes and materials insufficient to render a reliable blood test;"

(7)     "the machine utilized by Trinity Medical Center for alcohol blood testing and the alcohol blood test that the machine used is specifically limited to clinical hospital use only, and the test is specifically stated not to be reliable to be used for 'forensic purposes;'"

(8)     "the protocols to be followed for use of Trinity Medical Center['s] chemical testing machine to be reliable for forensic purposes was not followed and is never followed since the blood alcohol test is designed strictly for clinical use by the hospital;" and

(9)     "the Trinity Medical Center's laboratory personnel have not trained on the chemical testing machine for performing forensic lab work and have not been directed by their supervisors to perform forensic lab work on such chemical testing machine."

Appellant does not raise grounds (1)-(4), (6), and (8) on appeal. Therefore, we do not

---

[2] Research has revealed no Texas case containing the word "Mirecles."

7

address these contentions further.

Appellant's contentions on appeal regarding exclusion of the hospital blood test results based on asserted contamination of the blood specimen, an asserted gap in the chain of custody, and the propriety of testing blood serum rather than whole blood were not raised in the October 2007 motion to suppress. Therefore, appellant may not rely on the October 2007 motion to preserve these contentions as a basis for challenging the admissibility of Waxler's unobjected-to trial testimony regarding appellant's blood test results. We do not further address these contentions.[3]

We turn to the remaining appellate contentions that the trial court should have excluded the hospital blood test results from the jury's consideration because

- "the manufacturer of the hospital's blood testing machine designate[d] that the machine was unreliable for forensic blood testing;" and

- "the State failed to present evidence that the blood test met the three *Kelly* criteria required for scientific evidence to be considered sufficiently reliable as to be of help to a jury."

The first contention generally corresponds to grounds (7) and (9) referenced in the October 2007 motion to suppress. The second contention generally corresponds to ground (5) referenced in the October 2007 motion to suppress.

With respect to the purpose for which the hospital's blood testing machine is to be used, the record does not support an assertion that the manufacturer designated the machine to be "unreliable for forensic blood testing." Defendant's Exhibit 5 lists measurements for 13 substances in appellant's blood. Under the listing for "ALCOHOL," the following phrase appears on the report: "FOR THERAPEUTIC

---

[3] We note that appellant's original brief filed on May 2, 2008 does not raise an issue challenging the reliability or admissibility of testing conducted on blood serum rather than whole blood. Appellant's supplemental brief on remand raises this new issue. Even if we were to allow the belated addition of a new issue at this stage, this newly added issue provides no basis for reversal for reasons explained in the text.

PURPOSES ONLY, NOT FOR FORENSIC USE."

During cross-examination, Waxler was asked the following question: "Is it true, Ms. Waxler, that the manufacturer designated for that analyzer that it was not to be used for forensic use?" She responded: "I don't believe that any of the literature that was supplied to us ever said anything about that." In response to a follow up question, Waxler stated that the hospital itself "put a disclaimer on our results to say for therapeutic purposes only, not for forensic use, only because we are not certified as a forensic laboratory." Waxler then was asked: "And you're not certified as a forensic laboratory because you cannot show chain of custody; that is, you can't show that there's not contamination of your test tubes?" Waxler responded: "No, it's because we do not choose to go through the certification process to become a forensic laboratory."

Based on this record, we reject appellant's contention that the trial court abused its discretion by admitting evidence of the blood test results because the hospital used a machine whose manufacturer designated the machine to be "unreliable for forensic blood testing."

In his second contention, appellant argues that the State failed to demonstrate the reliability of the hospital's blood testing process. Appellant contends the testing process was unreliable because (1) the hospital laboratory was not certified to operate the Synchron LX analyzer for forensic testing; (2) the analyzer was not properly calibrated; (3) Waxler did not correctly convert the results obtained from blood serum to results applicable to whole blood; (4) no potential error rate was established; (5) Waxler's experience and skill in performing forensic tests was not established; (6) blood serum tests are not reliable; and (7) Waxler did not remember her actions taken on the night appellant's blood was tested.

Appellant links these reliability challenges by arguing that "the State bore the burden of persuasion by clear and convincing evidence that the blood test results were trustworthy." He cites *Kelly*, 824 S.W.2d at 573, to support this proposition. He also relies on *Kelly* in asserting that the State was required to adduce proof regarding

9

certification, conversion of serum readings to readings for whole blood, calibration, error rate, and technician experience "as part of establishing the reliability of scientific evidence when that reliability is called into question by an objection."

Appellant misplaces his reliance on *Kelly*'s reference to a clear and convincing standard. This reference addresses the burden of persuasion borne by a "proponent of novel scientific evidence" who seeks admission of such evidence under Rule 702. *Id*. Appellant does not argue and the appellate record does not suggest that the blood test at issue is novel.

Even if it is assumed that the test at issue is novel, this case arrives on appeal in a far different posture than *Kelly*. The appellant in *Kelly* did not merely file a motion to suppress; in addition, a suppression hearing was conducted outside the jury's presence before the evidence was admitted at trial. *Id*. at 569. Six witnesses testified during the suppression hearing in the course of examining the scientific issues and developing a detailed record concerning the specific reliability challenges being asserted on appeal. *Id*.; *see also Wooten v. State*, 267 S.W.3d 289, 297 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("At the Rule 705 hearing, three witnesses testified as to how blood-alcohol results from a Dimension RXL Analyzer machine . . . are processed and analyzed.")

Here, in contrast, the record provides no indication that a suppression hearing was held before or during trial with respect to the hospital blood test results. Nor does the record indicate that the detailed reliability challenges argued on appeal were presented for the trial court's consideration and ruling before Waxler testified at trial about the hospital blood test results. Appellant does not contend that the trial court erred by failing to conduct a suppression hearing before or during trial. Appellant's fleeting references to *Daubert* and a non-existent "Mirecles" case in his suppression motion provide insufficient notice regarding the extensive reliability arguments developed on appeal. On this record, we cannot conclude that the trial court abused its discretion by admitting Waxler's unobjected-to trial testimony regarding the hospital blood test results.

## CONCLUSION

We affirm the trial court's judgment.

/s/     William J. Boyce
Justice

Panel consists of Justices Seymore, Boyce, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).