Jackie Marshall **DURRETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–99–00080–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 4, 2001.

---

Dan Cogdell, Houston, for appellants.

Spencer R. Giles, Bryan, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

## OPINION

ANDERSON, Justice.

Appellant pleaded guilty to the offense of driving while intoxicated. Appellant and the State agreed on punishment and the trial court assessed punishment at 180 days in the Brazos County Jail and a $2,000 fine. The trial court suspended the sentence and one-half of the fine, and placed appellant on community supervision for eighteen months. In two grounds of error, appellant complains the trial court erred when it admitted evidence of appellant's blood alcohol content as reflected in his medical records because the evidence failed to show that the blood sample tested was his, and the evidence failed to establish the proper chain of custody of the blood sample tested.[1] We affirm.

## I. Factual Background

This appeal results from a one car accident that occurred on May 14, 1996. Appellant drove over a curb and into a brick partition in Brazos County. Appellant and his passenger sustained injuries as a result of the accident. Because of his injuries, an emergency medical service transported appellant to St. Joseph's Hospital in Bryan. After a physical evaluation in the emergency room, appellant's blood was drawn at a doctor's request and tested for alcohol content, among other tests, by hospital personnel. Appellant's blood test reflected 189 milligrams of alcohol per deciliter, a blood alcohol level exceeding the legal limit for operating a motor vehicle in Texas. The trial court conducted a pre-trial hearing regarding appellant's Motion to Suppress Specimen. During the hearing, the trial court admitted into evidence appellant's medical records as State's Exhibit Number One. This exhibit contained the results of appellant's blood test. Subsequently, the trial court denied appellant's motion to suppress the blood specimen.

## II. Motion to Suppress

In *Guzman v. State,* the Texas Court of Criminal Appeals reaffirmed the long-standing rule that appellate courts should show almost total deference to a trial court's finding of facts, especially when those findings are based on an evalu-

---

1. We do not perceive, as appellant does, a distinction between these two points of error. Indeed, appellant asserts in point one that the State failed to establish the necessary requirements for admittance of the blood sample, and in the next point argues that for the results of a blood sample to be admitted into evidence the State must show the proper chain of custody. Both of his complaints assert the inadequacy of the record to support the decision of the trial court to admit appellant's medical records, which is an attack on the court's evidentiary ruling. Because the only challenge is to an evidentiary ruling, albeit in bifurcated form, our resolution of appellant's points of error is based on the abuse of discretion standard.

ation of credibility and demeanor. 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The appellate court should afford the same amount of deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on a evaluation of credibility and demeanor. *Id.* However, the appellate court may review *de novo* the trial court's ruling on "application of law to fact questions" whose resolution do not turn on an evaluation of credibility and demeanor. *Id.*[2]

■■■ At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Banda v. State,* 890 S.W.2d 42, 51 (Tex.Crim.App.1994). As the trier of fact at the hearing on the motion to suppress, the trial court is free to believe or disbelieve all or any part of any witness's testimony. *Porter v. State,* 969 S.W.2d 60, 64 (Tex.App.—Austin 1998, pet. ref'd). Because the trial court's decision here to admit the hospital records showing appellant's blood alcohol level was based on its evaluation of the credibility of the witnesses and the weight to be accorded their testimony, we will apply the deferential abuse of discretion standard of review and not the *de novo* standard. We will reverse the trial court's decision only if it clearly abused its discretion and we find the error was harmful in that it impaired a substantial right of the defendant. *Id.*

### III. Standard For Admitting Blood Tests

■■■ In order for the results of a blood test to be admitted into evidence, a proper chain of custody of the blood sample that was drawn from the accused and later tested must be established. *See Moone v. State,* 728 S.W.2d 928, 930 (Tex. App.—Houston [14th Dist.] 1987, no pet.). Proof of the beginning and the end of the chain will support admission of the evidence barring any showing of tampering or alteration. *Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Crim.App.1989). Any gaps in the chain go to the weight of the evidence rather than to its admissibility. *Penley v. State,* 2 S.W.3d 534, 537 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied,* 530 U.S. 1243, 120 S.Ct. 2689, 147 L.Ed.2d 961 (2000).

When the State first attempted to introduce appellant's medical records reflecting his blood alcohol level on May 14, the date of the accident, appellant objected on the grounds of hearsay. The trial court nevertheless admitted the medical records of appellant reflecting his blood test results under Rule 803(6) of the Texas Rules of Evidence, the business records exception to the hearsay rule. The business records exception to the hearsay exclusion rule encompasses a record of events made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the report, all as shown by an affidavit in conformance with Rule 902(10). *See* Tex.R.Evid. 803(6). Exhibit One had the proper authenticating affidavit. The hearing on appellant's motion to suppress blood specimen continued, and at the end of the

**2.** We recognize that *Guzman* sets out the standard of review for a trial court's evidentiary rulings in a motion to suppress hearing. However, the *Guzman* standard incorporates both *de novo* and abuse of discretion tests, and the latter is the same as the familiar abuse of discretion standard described in *Montgomery v. State* and applied to pure evidentiary rulings. 810 S.W.2d 372, 391 (Tex. Crim.App.1990) (op. on reh'g). Where the only issue on appeal is the validity of a trial court's evidentiary ruling without any application of law to fact questions, the deferential abuse of discretion standard is applied, as that standard is described in both *Guzman* and *Montgomery.* As the court stated in *Montgomery,* appellate deference to a trial court's evidentiary rulings is a rule of judicial restraint, to avoid the anomaly of having appellate courts usurp a function the system has assigned to the trial courts. *Id.*

hearing appellant further objected the State had failed to show a proper chain of custody to demonstrate the blood sample, the alcohol content of which is reflected in the medical records, was that of appellant.

## IV. The Evidence

The State's first witness was Dr. Richard Alford, a surgeon who takes calls for emergency patients at St. Joseph's Hospital where appellant was taken after the accident. He treated appellant on the night of May 14. He testified that appellant's medical records, which had been admitted earlier during his testimony, reflected that appellant's blood alcohol level was 189 milligrams per deciliter. He also testified that when a patient is admitted to the emergency room as the result of an accident, the hospital routinely has blood drawn to assist in the diagnosis of the source of any confusion exhibited by an emergency room patient. Here, appellant exhibited confusion, and Dr. Alford found it difficult to differentiate between appellant's confusion resulting from alcohol consumption reflected in his blood and that due to a concussion. On cross-examination Dr. Alford admitted he did not know who made the request to withdraw appellant's blood. Neither did he know who actually made the withdrawal.

Mike Richardson testified that he is employed at St. Joseph in the emergency services department, and his duties include blood collections. Appellant's medical records reflect that his blood was drawn and sent to the laboratory for analysis within a short time after he arrived by ambulance. Richardson testified that the hospital generates adhesive labels bearing bar codes for blood samples, which reflect the patient's name, date of birth, and date of admission. He also testified that during a blood draw for alcohol level, a special procedure is used. Instead of using an alcohol preparation on the skin, betadine is used. He testified that the request for the blood withdrawal was made by a physician because when one is made pursuant to a request by a law enforcement agency, other personnel perform the test. After the blood is drawn, the collection time and receiving time will be entered in the computer system. He testified the computer will assign a specimen number to the blood sample so collected, and this information is also printed on the adhesive labels that are affixed to the tubes of blood that are forwarded to the laboratory for analysis. Richardson also stated that his initials would appear on the labels affixed to the tubes. When asked about possible mistakes in affixing bar code labels to the tubes of blood drawn from the patient whose information appeared on the label, he responded that the hospital policy is to only collect one sample at a time from a patient, and that sample is to be immediately labeled before another procedure is initiated. Once the blood is collected and labeled, it is properly wrapped and sent by pneumatic tube to the laboratory in the hospital for testing. The lab technician scans the bar code on the tubes to record the patient's name. On cross-examination, Richardson did not recall collecting the blood sample from appellant, and could not identify exactly who received it in the lab. He stated, however, that his testimony reflected the policy and procedures of his department in the hospital and he follows those policies and procedures in carrying out his duties at the hospital.

The State's next witness was Duane Hunt, a medical technologist working at St. Joseph's Hospital. He is qualified to perform blood alcohol testing, he was on duty May 14, and he performed the tests on appellant's blood samples, which produced the blood alcohol report reflected on appellant's medical records, State's Exhibit One. He stated all samples he receives have the bar codes, and he verifies that the name on the sample matches the request for the tests to be performed. He then enters the bar code into the chemistry analyzer which assigns the results of the blood test to the person identified in the bar code data. Hunt stated the visual

spectrum analysis performed by the chemical analyzer is a method of testing blood chemistry that is generally accepted within the scientific field. The blood used for each test is retained for ten days and then destroyed. On cross-examination he admitted, contrary to his earlier testimony on direct examination, that he did not have an independent recollection of doing the test reflected in the medical records on the evening of May 14. He noted, however, that certain tests like appellant's do stand out in his memory because there had been a car wreck and the alcohol level was high.

## V. Analysis

█ The evidence submitted by the State adequately linked the blood alcohol level reflected in Exhibit One to appellant. This evidence demonstrates a physician requested the blood sample, and the sample was carefully identified as appellant's specimen at the time it was taken by Richardson pursuant to St. Joseph's policies and procedures, which appellant has not challenged or asserted were not followed here. The blood collected and identified was promptly sent by pneumatic tube to the laboratory for analysis by Hunt, and his tests revealed the high alcohol content of the blood sample. This evidence reflects the beginning and the end of the chain of custody of the blood sample drawn from appellant. *See Beck v. State*, 651 S.W.2d 827, 829 (Tex.App.—Houston [1st Dist.] 1983, no pet.) (stating that testimony of "Life Flight" doctor and laboratory technician showed both beginning and end of chain of custody of blood taken from appellant, and fact that doctor did not remember who actually took the sample goes only to weight of the evidence and not its admissibility). Proof of the beginning and the end of the chain of custody will support admission of the evidence. *Stoker*, 788 S.W.2d at 10. Dr. Alford's testimony goes to the source of the request for the blood sample and is not pertinent here because appellant is not asserting on appeal that the blood sample was requested by law enforcement personnel.

█ Appellant contends on appeal that *Beck* does not apply to the facts *sub judice* because, among other things, there was no testimony as to who performed the blood test, when the sample was taken, or what happened to the sample after it was taken. We disagree. First, Richardson testified he always placed bar codes identifying the patient's name, date of birth, and date of admission to the hospital on each blood sample before sending it to the laboratory for testing. Second, the record reflects Duane Hunt performed the tests on appellant's blood, which produced the blood alcohol level reflected in Exhibit One. The facts in *Beck* are virtually on all fours with the case at bar. There, appellant was challenging his conviction of involuntary manslaughter based, in part, on the contention the trial court erred in admitting the results of his blood/alcohol test because the State failed to establish a chain of custody to prove the sample analyzed was his. *Beck*, 651 S.W.2d at 828. During the pre-trial motion to suppress hearing, Dr. Zalucek, the physician aboard the Life Flight helicopter transferring Beck from the accident scene to the hospital, testified he could not recall who took the blood sample, but he knew it was taken because "this was standard hospital procedure." *Id.* at 829 He also stated that once the blood sample was taken, it was marked with the patient's emergency room number and sent by pneumatic chute to the laboratory. *Id.* In addition, a laboratory technician, Bobbie Susan, testified she was on duty at Hermann Hospital when the sample was delivered and she conducted the test on the sample which bore Beck's emergency room number. *Id.*

█ The *Beck* court held the blood alcohol evidence was properly admitted because these two witnesses reflected the beginning and the end of the chain of custody of the blood taken from Beck, and, importantly, the fact the doctor could not remember who actually took the sample goes only to the weight of the evidence and

not its admissibility. The same analysis applies here. That a witness could not recall taking appellant's blood sample or gave contradictory testimony regarding whether or not he remembered performing the blood alcohol analysis on appellant's blood sample goes to the weight, not the admissibility, of the evidence. *Stoker*, 788 S.W.2d at 10 (stating any discrepancy in testimony goes only to weight of evidence and not its admissibility). Moreover, for reasons not attributable to the State, the events under scrutiny here occurred on May 14, 1996, but the motion to suppress hearing was held on November 20, 1998, over two years later. After the passage of so much time it can be expected that memories would fail, but this is not a *per se* defect. The resolution of the issue here—chain of custody—turned on the evaluation of the credibility of the witnesses and the weight to be accorded their testimony. Indeed, there was no testimony that appellant's blood was ever contaminated during or after it was drawn, and there was nothing to suggest the bar code identification on appellant's blood sample was altered at any point from the moment it was gathered to the time its alcohol content was determined. Barring any showing of tampering or alteration, proof of the beginning and the end of the chain will support admission of the evidence. *See id.* In addition, there was no evidence suggesting appellant's blood was not collected and tested in conformance with St. Joseph's policies and procedures.

After reviewing the record before this court, we find no basis for a conclusion the trial court abused its discretion in admitting appellant's medical records. Because it was not error for the trial court to admit this evidence, we overrule appellant's points of error.

The judgment of the trial court is affirmed.