NO.
12-06-00019-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

RANDAL WAYNE MCNULTY,      §                      APPEAL FROM THE 349TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      HOUSTON COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Randal Wayne
McNulty appeals his conviction for intoxication manslaughter, for which he was
sentenced to imprisonment for ninety-nine years.  In two issues, Appellant argues that the
trial court improperly refused to submit the lesser included offense of driving
while intoxicated and improperly admitted hospital records containing the
results of Appellant’s blood test taken during the course of Appellant’s
emergency medical treatment following the collision at issue.  We affirm.

 

Background

            On
the afternoon of November 29, 2004, Appellant was driving northbound on Loop
304 in Houston County, Texas.  It had
been raining that day, and traffic was heavy. 









            Danny
Lamb was also driving northbound on Loop 304. 
Lamb testified that as he was driving, he noticed a 4x4 long bed pickup
truck traveling at a high rate of speed to his right on the shoulder of the
road.  Lamb braked his vehicle because
the truck was only inches from his vehicle and he believed the truck would hit
the oncoming speed limit sign if it did not return to the roadway.  As Lamb braked, the other truck immediately
turned sharply in front of him.  As the
other truck returned to the paved roadway,[1] its driver tried to
steer the truck straight away.  The truck
then fishtailed and careened into a southbound lane of oncoming traffic,
colliding with a smaller truck driven by Meridith Anderson.  Anderson was killed in the collision.  The northbound truck’s driver, later
determined to be Appellant, was ejected from his vehicle. 

            When
Crockett Police Corporal Mike Harrell arrived on the scene, he saw Appellant
lying face down on the ground.  Appellant
was breathing.  Harrell further saw that
Anderson was pinned in his truck.  The
steering wheel of Anderson’s truck had struck his chest and his head had struck
the truck’s windshield.  Harrell
testified that based on his investigation, Anderson died as a result of his
vehicle being struck by Appellant’s vehicle, and that Appellant was responsible
for the collision.  Harrell found
twenty-one sixteen ounce cans of Busch® beer and three quarters of a fifth of
Wild Turkey® whiskey within two or three yards of Appellant’s truck.  Harrell further testified that from witnesses’
accounts, he determined that the collision occurred after Appellant veered
around other vehicles onto the shoulder, lost control, overcorrected, and
crossed into the southbound lane of oncoming traffic.  Harrell stated that although a driver can
overcorrect a vehicle without alcohol necessarily being involved, drivers are
more likely to overcorrect when intoxicated.

            Appellant
was taken by ambulance to the emergency room at East Texas Medical
Center-Crockett.[2]   Eric Adams, a
paramedic who treated Appellant en route to the hospital, testified that
Appellant smelled strongly of alcohol. 

            ETMC
emergency room nurse Tami Millican testified that when Appellant arrived, he
had a life threatening condition, was intubated, and was being assisted in his
breathing.  Millican further testified
with regard to the hospital records pertaining to Appellant’s treatment at
ETMC.  These hospital records were
received into evidence subject to later admission pending the trial court’s
ruling on Appellant’s objections. 
Millican testified that the notes in the records indicated that
Appellant was unresponsive and smelled of alcohol upon his arrival.  She further testified that various lab tests
were administered to Appellant.

            Emergency
room manager Helen Dise responded to the emergency room to assist with
Appellant’s care.  Dise started the IV
and stated that she was ninety percent certain that she would have drawn the
blood sample from Appellant when she started the IV.  Dise further stated that she could not recall
if she actually drew blood from Appellant, but if she did not, then another
emergency room employee would have done so. 
Dise testified that in a rare case, she would not draw blood from a
patient when establishing the IV line, because there was already a central line
being placed by a physician, through which the blood would be drawn.[3]  Dise explained that occasionally a registered
nurse or lab technician might draw a blood sample.  Dise testified that, in any event, the blood
sample is labeled on the tube while at the patient’s bedside with the patient’s
name or a unique account number assigned to the patient.

            Medical
technologist Julie Doon testified that she was assigned to run blood and urine
testing at ETMC and was on duty on the day in question.  Doon testified that she ran lab tests on
Appellant’s blood that day.  Doon further
testified that there are four different types of tubes used in the ETMC
emergency room to hold blood drawn for different tests, but that none of the
preservatives contained in the various tubes would interfere with the testing
performed.  Doon stated that in her
experience, using alcohol swabs to clean a patient’s arm before testing has no
effect on the results obtained from blood tests for alcohol.  Doon further stated that she could not recall
which sort of tube was used to gather Appellant’s blood sample, but that the
blood tests would not be altered by use of one tube versus another.  Doon testified that she believed Appellant’s
blood sample came from the emergency room because in a trauma case, the sample
is needed right away and one of the emergency room nurses would have drawn
it.  Doon further testified that she was
the person who handled the sample when it reached the lab.

            Treating
physician Mark Spencer testified about his care of Appellant.  Spencer further testified concerning his
handwriting contained in the previously received medical records.[4]  Spencer described Appellant’s condition upon
examination and further testified that Appellant’s blood alcohol level was more
than three times the legal limit.

            Following
Spencer’s testimony, both parties rested. 
Thereafter, the trial court conducted a charge conference.  Appellant requested the inclusion of an
instruction concerning the lesser included offense of misdemeanor driving while
intoxicated.  The trial court refused to
include Appellant’s requested instruction.

            Ultimately,
the jury found Appellant guilty of intoxication manslaughter and, following a
trial on punishment, assessed his punishment at imprisonment for ninety-nine
years and a five thousand dollar fine. 
The trial court sentenced Appellant accordingly, and this appeal
followed.

 

Lesser
Included Offense

            In
his first issue, Appellant argues that the trial court erred in refusing to
submit an instruction on the lesser included offense of misdemeanor driving
while intoxicated.  An offense is a
lesser included offense if (1) it is established by proof of the same or less
than all the facts required to establish the commission of the offense charged;
(2) it differs from the offense charged only in the respect that a less serious
injury or risk of injury to the same person, property, or public interest
suffices to establish its commission; (3) it differs from the offense charged
only in the respect that a less culpable mental state suffices to establish its
commission; or (4) it consists of an attempt to commit the offense charged or
an otherwise included offense.  Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 2006).  Furthermore, a charge on
a lesser included offense should be given only when there is some evidence that
would permit a rational jury to find that the defendant is guilty of the lesser
offense but not guilty of the greater.  See
Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau
v. State, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993).  Driving while intoxicated is a lesser
included offense of intoxication manslaughter. 
See Henry v. State, No. 01-05-00845-CR, 2007 WL
79449, at *2 (Tex. App.–Houston [1st Dist.] Jan. 11, 2007, no pet.).  Thus, our analysis will focus on whether
there is any evidence of record that would permit a rational jury to find that
the defendant is guilty of only driving while intoxicated.  

            To
support a conviction for intoxication manslaughter, the evidence must show that
the defendant (1) operated a motor vehicle in a public place, (2) was
intoxicated, and (3) by reason of that intoxication, caused the death of
another by accident or mistake.  See Tex. Pen. Code Ann. § 49.08(a)
(Vernon 2003).  To support a conviction
for driving while intoxicated, the evidence must show that the defendant is
intoxicated while operating a motor vehicle in a public place.  See Tex.
Pen. Code Ann. § 49.04(a) (Vernon 2003).  The elements of manslaughter differ from
criminally negligent homicide in that a required element of intoxication
manslaughter is that the defendant caused the death of another by reason of the
intoxication, which is not required in the lesser offense of driving while
intoxicated.  Compare Tex. Pen. Code Ann. § 49.08(a) with
Tex. Pen. Code Ann. §
49.04(a).  It is not enough that
operation of a vehicle, even by an intoxicated person, causes the death;
rather, the “death must be the result of the intoxication and proof must be
made  . . .  of that thing which worked a causal
connection between the intoxication and the death.”  Daniel v. State, 577 S.W.2d
231, 233 (Tex. Crim. App. 1979); see also Glauser v. State, 66
S.W.3d 307, 313 (Tex. App.–Houston [1st Dist.] 2000, pet. ref’d); Henry,
2007 WL 79449, at *3.

            In
the case at hand, Appellant argues that Harrell’s testimony that a driver can
overcorrect a vehicle without alcohol necessarily being involved was sufficient
to permit a rational juror to find that he was guilty only of the lesser
offense of driving while intoxicated.  We
disagree.  Harrell’s testimony was a
general statement in response to a general question that steering
overcorrection does not always involve alcohol. 
Neither the question nor Harrell’s response related to Appellant.  Furthermore, Harrell was never asked whether
Appellant’s overcorrection was the result of his intoxication.  Thus, Harrell’s testimony that  a driver can overcorrect a vehicle without
alcohol necessarily being involved does not amount to sufficient evidence that
Appellant’s overcorrection was the result of some factor other than
intoxication.  Therefore, we hold that
the trial court was not required to submit an instruction on the lesser
included offense of misdemeanor driving while intoxicated.  Appellant’s first issue is overruled.

 

Admissibility
of Blood Test

            In
his second issue, Appellant argues that the trial court erred in admitting the
results of his blood test.  Specifically,
Appellant contends that the results of the blood sample were not trustworthy
because (1) it is unknown who drew the blood, (2) it is unknown what type of
container was used to hold the blood, (3) the evidence is lacking as to chain
of custody, and (4) the evidence did not support the test’s reliability.[5]

            In
order for the results of a blood test to be admitted into evidence, a proper
chain of custody of the blood sample that was drawn from the accused and later
tested must be established. Durrett v. State, 36 S.W.3d 205, 208
(Tex. App.–Houston [14th Dist.] 2001, no pet. (citing Moone v. State,
728 S.W.2d 928, 930 (Tex. App.–Houston [14th Dist.] 1987, no pet.)).  Proof of the beginning and the end of the
chain will support admission of the evidence barring any showing of tampering
or alteration.  See Stoker v. State,
788 S.W.2d 1, 10 (Tex. Crim. App.1989); Durrett, 36 S.W.3d at
208.  Any gaps in the chain go to the
weight of the evidence rather than to its admissibility.  Durrett, 36 S.W.3d at 208; see
Penley v. State, 2 S.W.3d 534, 537 (Tex. App.–Texarkana 1999, pet.
ref’d).

            In
the case at hand, the blood sample was taken from Appellant for purposes of
medical treatment when he arrived unconscious in the emergency room following
the accident in question.  Dise started
Appellant’s IV and stated that she was ninety percent certain that she would
have drawn the blood sample from Appellant when she started the IV.  Dise further stated that she could not recall
if she actually drew blood from Appellant, but if she did not, then another
emergency room employee would have done so. 
Dise explained that occasionally a registered nurse or lab technician
might draw a blood sample.  Dise
testified that, in any event, the blood sample is labeled on the tube while at
the patient’s bedside with the patient’s name or a unique account number
assigned to the patient. 

            Doon
testified that she was assigned to run blood and urine testing at ETMC and was
on duty on the day in question.  Doon
testified that she ran lab tests on Appellant’s blood that day.  Doon further testified that there are four
different types of tubes used in the ETMC emergency room to hold blood drawn for
different tests, but that none of the preservatives contained in the various
tubes would interfere with the testing performed.  Doon stated that in her experience, using
alcohol swabs to clean a patient’s arm before testing has no effect on the
results obtained from blood tests for alcohol. 
Doon further stated that she could not recall which sort of tube was
used to gather Appellant’s blood sample, but that the blood tests would not be
altered by use of one tube versus another. 
Doon testified that she believed Appellant’s blood sample came from the
emergency room because in a trauma case, the sample is needed right away and
one of the emergency room nurses would have drawn it.  Doon further testified that she was the
person who handled the sample when it reached the lab.

            Appellant
does not argue that there was tampering with or alteration of the blood sample
in question.  Therefore, because there is
proof of the beginning and the end of the chain of custody, the admission of
Appellant’s blood test results is supported. 
The fact that Dice could not recall with total certainty who actually
took Appellant’s blood sample goes to the weight of the evidence rather than
its admissibility.  See Durrett,
36 S.W.3d at 210–11.  Moreover, there was
ample testimony regarding the procedures utilized to take and test blood
samples so as to remove doubt about the link between the blood alcohol level
reflected in the medical records to Appellant. 
Appellant’s second issue is overruled.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
trial court’s judgment.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered March 14, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

                                                                                                                        

(DO NOT PUBLISH)











[1] The record reflects that the shoulder had
ended and the other truck was driving in the grass before it turned in front of
Lamb’s vehicle.





[2] East Texas Medical Center-Crockett is
hereinafter referred to as “ETMC.”





[3] Appellant had not had a central line inserted
on the day in question.





[4]
Appellant objected to the records because, among other reasons, the State
failed to demonstrate the reliability of the records in that the testimony
regarding chain of custody of the blood sample was insufficient.  The trial court overruled Appellant’s
objection and admitted the records.





[5]
At trial, while Appellant raised an objection to the “reliability of the
document,” he did not challenge the reliability of the test procedure
itself.  Our analysis is limited to
Appellant’s objections based on improper chain of custody, which comport with
his argument on appeal.