COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| BRANDON ISLAS, | § | |
| Appellant, | § | No. 08-12-00157-CR |
| | § | Appeal from the |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2010-1896-D) |
| | § | |

# O P I N I O N

Appellant Brandon Islas contests his conviction of driving while intoxicated, enhanced to a third-degree felony. TEX. PENAL CODE ANN. § 49.09(b)(2) (West 2011) (DWI enhanced to a third-degree felony if defendant has two previous convictions of any other offense relating to operating a motor vehicle while intoxicated). A jury found Appellant guilty and assessed his punishment at fifteen-years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises four issues on appeal. We affirm.

## BACKGROUND

*Disposition of the Case*

At approximately 1:30 a.m. on the night of July 13, 2010, Appellant's vehicle rolled over

and sustained heavy damage in a single-vehicle accident near the intersection of I-35 and Valley Ridge in Lewisville, Texas.[1] A group of teenagers, including Nicolette D'eelia, Colton Crews, Robert Mayo, and Michael Harvey were nearby, heard the accident, and drove to the scene to see if anyone needed assistance. They were the first witnesses to arrive at the scene within two to five minutes after hearing the crash. There they found Appellant lying on the ground next to the driver's side of the vehicle, with his head toward the front left wheel, bleeding from a small injury above his left eye. The witnesses did not see another person in the vicinity of the accident scene. Appellant did not indicate to the teenagers that another person had been involved in the accident and did not demonstrate concern for any possible passenger. Nicolette D'eelia observed Appellant "wasn't all there," reeked of alcohol, slurred his words, and was incoherent. Colton Crews testified that Appellant appeared to be intoxicated because his breath smelled strongly of alcohol, he slurred his speech, and acted extremely friendly towards the teenagers.

Appellant asked the teenagers not to call the police because he did not want to involve anybody else. Upon hearing approaching sirens, Appellant attempted to give the teenagers a group hug, walked away, and then ran towards the I-35 and Valley Ridge overpass. Officers who arrived on scene began searching the surrounding area for Appellant and any other possible witnesses or victims of the crash. About thirty minutes later, Officer Steve Dickens located Appellant underneath the Valley Ridge overpass. Appellant exhibited several signs of intoxication, including red, glassy eyes, disheveled demeanor, and a strong smell of alcohol. When officers asked Appellant if he had been driving when the vehicle crashed, he refused to answer. Officers took Appellant back to the scene of the accident where the four witnesses

---

[1] As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

2

identified him as the man they had spoken with before he fled the scene. Appellant told officers he had had three beers that night but refused to perform any field sobriety tests. He also stated that he had not been driving, no one could place him behind the wheel, he was not going to jail for DWI, and his friend Jeremy had been driving the vehicle. Appellant however, had the keys to the vehicle in the front, left pocket of his shorts.

Officers arrested Appellant for driving while intoxicated. At the police station, Appellant refused to give a breath sample. After determining that Appellant had two prior convictions for DWI, officers obtained a mandatory draw of Appellant's blood without his consent. Officers John Martinez and Brian Gibbins took Appellant to a local hospital where a phlebotomist drew a blood sample. At trial, Officer Gibbins identified the blood kit he prepared for Appellant's blood draw, which was sealed and given to the property room. Integrated Forensic Laboratories tested Appellant's blood sample which showed a blood alcohol concentration of 0.17 grams of alcohol per 100 milliliters of blood, in excess of the 0.08 grams of alcohol per 100 milliliters of blood legal limit. *See* TEX. PENAL CODE ANN. § 49.01 (West 2011).

At trial, Adam Vega testified that he observed the crash while he was standing outside of the bakery where he works near the accident scene. Vega testified the vehicle was located near a neighboring Ford dealership when he observed it roll before coming to a stop. Although the lights from the dealership illuminated the accident scene, Vega did not see anyone in the passenger seat or on the ground on the passenger side of the car. He could not see the driver's side of the vehicle but he did see its headlights turn off. Vega called 9-1-1 and kept the vehicle in sight until he saw police arriving at the scene. He did not see anyone get out of the vehicle or leave the scene of the accident.

3

Officer Greg Hopper, who is experienced in accident reconstruction, photographed and investigated the accident scene. He testified the vehicle rolled to the left and the majority of the vehicle's damage was sustained on its left side. If the driver had been injured, the injuries would most likely have occurred on the left side of the driver's body. In Officer Hopper's opinion, the injury on the left side of Appellant's head above his left eye, was consistent with him being in the driver's seat when the vehicle rolled to the left.

Appellant's friend Bryan Campbell testified that he was with Appellant at a bar prior to the accident. According to Campbell, he and Appellant befriended a man named Jeremy at the bar, and Jeremy drove Appellant's vehicle when they left the bar that night. However, Campbell did not know Jeremy's last name and Jeremy did not come forward following the accident. Bryan Campbell originally testified he saw Appellant and Jeremy leave the bar with Jeremy driving at closing time, which was either midnight or 2 a.m. On cross-examination, Campbell admitted he had previously told the prosecutor the bar closed at 2 a.m., but he left at midnight.

Appellant's ex-wife Ami Swaim testified Appellant told her after the accident that Bryan Campbell had been driving the vehicle. The State discredited Swaim's testimony by playing a recorded conversation between Swaim and Appellant that occurred while Appellant was in jail. During the conversation, Appellant briefly discussed what Swaim would say during her trial testimony.

Appellant pleaded true to two enhancement paragraphs regarding his two prior convictions for driving while intoxicated, enhancing this offense to a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.09(b)(c) (West 2011). For enhancement purposes at punishment, the State also offered evidence of Appellant's prior conviction of burglary of a motor vehicle. The jury found

4

Appellant to be the same person convicted of the burglary offense and sentenced him to fifteen-years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

*Appellant's Choice of Counsel*

Court-appointed attorney Ron Vanzura represented Appellant at trial. Trial was originally set for February 7, 2012. On February 3, 2012, attorney Riley Massey filed a motion for continuance as Appellant's attorney of record and alleged Vanzura had failed to file any pretrial motions, conduct discovery, or subpoena witnesses despite Appellant's requests. On February 7, 2012, the trial court conducted a pretrial hearing at which Vanzura and attorney Dominick Marsala, a colleague of Massey's, appeared on Appellant's behalf. Appellant's allegations regarding Vanzura's conduct were discussed and rebutted by both the prosecutor and Vanzura. Vanzura did not wish to withdraw as counsel and the trial court reset the case for February 21, 2012.

Vanzura filed a motion for continuance in order to locate and subpoena two witnesses and the trial court held a hearing on that motion on February 28, 2012. Appellant again complained regarding Vanzura's representation and stated he wanted to fire Vanzura and hire Marsala to handle his case. Appellant had paid Marsala a $1,750 retainer for the case, but Marsala explained that he was unsure whether Appellant intended the payment to serve as a retainer for this case or payment on a debt Appellant owed Marsala for a different legal matter. Appellant then became upset with Marsala, and stated he wanted to hire attorney Steve Wohr to represent him instead. Marsala stated he would either be willing to try the case or transfer Appellant's payment to Wohr and permit Wohr to represent Appellant. The prosecution objected to Appellant's multiple

attempts to substitute attorneys because the case had been pending for more than one and one-half years. The trial court kept Vanzura on the case, set trial for March 27, 2012, and informed Appellant that he could substitute a retained attorney for Vanzura but that no additional continuances would be granted.

*Post-Trial Evidence Concerns*

In February 2013, Appellant's appellate counsel, Chris Raesz, received an email from the Denton County Criminal District Attorney's office regarding an investigation and audit taking place at the Lewisville Police Department's property and evidence room. The investigation identified errors on Appellant's property sheet documentation, specifically, the property sheet did not document movement of the blood specimen from the phlebotomist to the officer or from the lab back into property, and Item #1, a blood sample, was identified as missing from the property room.

Appellant filed a motion with this Court requesting his appeal be abated and remanded to the trial court for proceedings involving the possible mishandling and storage of evidence. We granted Appellant's motion and ordered the trial court to conduct a hearing and enter findings of fact, conclusions of law, and a written recommendation on the issue.

On April 15, 2013, after conducting a hearing, the trial court recommended Appellant's appeal be reinstated. The trial court made these findings of fact:

1. The Lewisville Police Department's property sheet does not document the movement of Brandon Islas's blood specimen from the phlebotomist, Garland Osborn, to Officer Brian Gibbins on July 13, 2010.
2. As shown during trial, Officer Gibbins received Islas's blood specimen from Osborn on July 13, 2010.
3. The Lewisville Police Department's property sheet does not document movement of Islas's blood specimen from Integrated Forensic Laboratories back into property at the Lewisville Police Department after it was tested a second time.

6

4. As shown during trial, the blood specimen was not taken from Integrated Forensic Laboratories back to property at the Lewisville Police Department on March 28, 2012, but was taken from the lab directly to court by Ron Fazio of Integrated Forensic Laboratories and signed over to Prosecutor Paul Hiemke.
5. The blood specimen is not in property at the Lewisville Police Department.
6. The blood specimen was entered into evidence at trial and is currently in the Denton County District Clerk's Office.
7. There has been no showing of tampering or alteration of the blood specimen.

The trial court entered these conclusions of law:

1. The fact that the Lewisville Police Department's property sheet did not document movement of Islas's blood specimen from the phlebotomist to Officer Gibbins is of no matter, as other evidence supported that Gibbins received the blood sample from the phlebotomist and was sufficient to prove the chain of custody.   *See Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Crim.App. 1989), *disapproved on other grounds by Leday v. State,* 983 S.W.2d 713 (Tex.Crim.App. 1998); *Durrett v. State,* 36 S.W.3d 205, 211 (Tex.App.—Houston [14th Dist.] 2001, no pet.); *Jackson v. State,* No. 14-05-00534-CR, 2006 Tex. App. LEXIS 6840, at **5-7 (Tex. App.—Houston [14th Dist.] Aug. 1, 2006, no pet.) (not designated for publication).
2. The fact that the Lewisville Police Department's property sheet did not document movement of the blood specimen from the lab back into property is of no matter, as the evidence supports that the blood specimen was not taken from the lab back to property, but was taken from the lab directly to court and signed over to Prosecutor Paul Hiemke.   *See Stoker,* 788 S.W.2d at 10; *Durrett,* 36 S.W.3d at 211; *Jackson,* 2006 Tex. App. LEXIS 6840, at **5-7.
3. The fact that the blood specimen is not in property at the Lewisville Police Department is of no matter, as the blood specimen was entered into evidence at trial and is currently in the Denton County District Clerk's Office.   *See Stoker,* 788 S.W.2d at 10; *Durrett,* 36 S.W.3d at 211; *Jackson,* 2006 Tex. App. LEXIS 6840, at **5-7.
4. A proper chain of custody of the blood specimen has been established.   *See* TEX. R. EVID. 901(b)(1); *see also Stoker,* 788 S.W.2d at 10; *Durrett,* 36 S.W.3d at 211; *Jackson,* 2006 Tex. App. LEXIS 6840, at **5-7.

## DISCUSSION

*Sufficiency of the Evidence*

In Issue One, Appellant contends the State did not meet its burden of proof by establishing beyond a reasonable doubt the necessary element of operation of a vehicle.   TEX. PENAL CODE ANN. § 49.04 (West 2011); *see* TEX. CODE CRIM. PROC. ANN. art. 38.03 (West 1979).

7

*Standard of Review*

When reviewing the sufficiency of the evidence to support a criminal conviction, we view all of the evidence in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *Young v. State,* 283 S.W.3d 854, 861 (Tex.Crim.App. 2009). A review of all the evidence includes evidence that was properly and improperly admitted. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). Direct evidence and circumstantial evidence are treated equally. *Id.* The trier of fact is the sole judge of the weight and credibility of the evidence. *See Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). It is the fact finder's role to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

When the evidence could support conflicting inferences, we presume the jury resolved any conflict in favor of the prosecution and defer to that determination. *Clayton,* 235 S.W.3d at 778. Therefore, when performing our sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991).

*Analysis*

A person commits the offense of driving while intoxicated if he operates a motor vehicle in

a public place while intoxicated. TEX. PENAL CODE ANN. § 49.04(a) (West 2011). The statute does not define the term "operating." *Id*.; *see Denton v. State,* 911 S.W.2d 388, 389 (Tex.Crim.App. 1995)*; Gunter v. State,* 327 S.W.3d 797, 800 (Tex. App.—Fort Worth 2010, no pet.). To establish a person was operating a motor vehicle, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle that would enable the vehicle's use. *Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex.Crim.App. 2012) (citation omitted). Therefore, any action which is more than preparation to operate a vehicle satisfies the statutory element of "operating." *Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.—Fort Worth 2008, no pet.). Whether or not a person was operating the vehicle is a question of fact to be resolved by the fact finder. *Kirsch*, 357 S.W.3d at 652; *Schragin v. State*, 378 S.W.3d 510, 515 (Tex. App.—Fort Worth 2012, no pet.). There must be a temporal link between the defendant's intoxication and his operation of the vehicle for the evidence to be sufficient to support a conviction for the offense of driving while intoxicated. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010).

Appellant sets forth and then distinguishes his case from two other DWI cases arising out of single-vehicle accidents with no direct evidence that the defendants operated the vehicles. *See Kuciemba,* 310 S.W.3d at 462 *and Scillitani v. State*, 343 S.W.3d 914, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In both cases, circumstantial evidence was sufficient to sustain the convictions. *Kuciemba,* 310 S.W.3d at 462; *Scillitani*, 343 S.W.3d at 920. Appellant distinguishes *Kuciemba* in that witnesses saw Kuciemba in the driver's seat of the vehicle, and here no one can place Appellant in the driver's seat of the vehicle near the time of the accident. *Kuciemba,* 310 S.W.3d at 462. Appellant distinguishes *Scillitani* wherein Scillitani admitted to

9

driving and Appellant has consistently denied that he was driving the vehicle at the time it rolled and has set forth a defense that his friend Jeremy was the driver. *Scillitani*, 343 S.W.3d at 920.

In support of this issue, Appellant notes his claims that Jeremy was the driver, as well as Bryan Campbell's testimony that he saw Jeremy driving when the group of friends left the bar. In his brief, Appellant states there is no proof that any other individual, namely Jeremy, was not driving the car, and there was ample time, up to five minutes, in which Jeremy could have fled the scene before the first witnesses arrived. Appellant contends the only evidence linking him to the operation of the vehicle is that he had the keys in his pocket. Appellant argues that possession of the vehicle's keys alone cannot establish beyond a reasonable doubt that he operated the vehicle.

The State maintains there was sufficient circumstantial evidence to support the jury's determination that Appellant operated the vehicle on the night in question. This evidence includes Adam Vega's observation of the crash from approximately 150 yards away and continuous vigil over the vehicle and crash scene until police arrived. Vega could only see the passenger side of the vehicle, did not see anyone in the passenger seat or on the ground near the passenger side of the car, and did not see anyone leave the accident scene. Although Vega could not see the driver's side, he did see the vehicle's lights turn off. Nicolette D'eelia, Colton Crews, Robert Mayo, and Michael Harvey heard the accident and arrived two to five minutes later to find only Appellant lying on the ground next to the driver's side door. Appellant did not express concern or ask about another person who was in the vehicle, or who might have been injured in the accident. Appellant asked the teenagers not to call the police and ran from the scene when sirens could be heard. The witnesses and officers who testified did not see anyone else in the area other than Appellant. Officer Hopper testified that the damage to the vehicle indicated the driver would

10

have sustained injuries on the left side of his body. Appellant was bleeding from a cut above his left eye. The vehicle was registered to Appellant and the keys to the vehicle were recovered from the front left pocket of Appellant's shorts. Bryan Campbell originally testified he saw Appellant and Jeremy leave the bar with Jeremy driving between 12 and 2 a.m., but then admitted during cross-examination it was closer to 12 a.m. when the men left. Also, Swaim testified that Appellant originally told her it was Campbell who was driving the vehicle on the night of the accident, which is inconsistent with Appellant's claim that Jeremy was the driver.

Having reviewed all the evidence in the light most favorable to the jury, we conclude a rational juror could have found beyond a reasonable doubt that Appellant operated the vehicle. *Brooks*, 323 S.W.3d at 895. The circumstantial evidence listed above sufficiently supports the jury's determination that Appellant operated the vehicle. *Hooper*, 214 S.W.3d at 16; *See also Kuciemba,* 310 S.W.3d at 462; *Scillitani*, 343 S.W.3d at 920. Issue One is overruled.

*Right to Counsel*

In Issue Two, Appellant claims he was denied the right to representation by counsel of his choice.

*Standard of Review*

The United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure guarantee a criminal defendant the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005); *Gonzalez v. State*, 117 S.W.3d 831, 836 (Tex.Crim.App. 2003). The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of his own choosing. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *Gonzalez*, 117 S.W.3d at

11

836-37. Although an accused is entitled to counsel of choice, it is not without limitations. *Brink v. State*, 78 S.W.3d 478, 485 (Tex. App. –Houston [14th Dist.] 2001, pet. ref'd). While there is a strong presumption in favor of a defendant's right to retain counsel of his choice, it may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice. *Gonzalez*, 117 S.W.3d at 836-37; *Webb v. State*, 533 S.W.2d 780, 784 (Tex.Crim.App. 1976); *see also Neal v. State*, 689 S.W.2d 420, 427 (Tex.Crim.App. 1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985) ("An accused ... may not use his constitutional right to counsel so as to manipulate the commencement of his trial to suit his convenience and pleasure.").

When a defendant is displeased with court-appointed counsel, he is responsible for bringing the matter before the trial court and bears the burden of proof in showing he is entitled to a change in counsel. *Malcom v. State*, 628 S.W.2d 790, 791 (Tex.Crim.App. 1982). Disagreements pertaining to trial strategy and personality conflicts are generally not sufficient grounds for dismissal of counsel. *King v. State*, 29 S.W.3d 556, 566 (Tex.Crim.App. 2000). When faced with a defendant's last minute request to change counsel, a trial court has three options. *Burgess v. State*, 816 S.W.2d 424, 428 (Tex.Crim.App. 1991). It may: (1) at its discretion, appoint new counsel or allow the defendant to retain new counsel; (2) deny new counsel and the defendant may assert his right to self-representation; or (3) deny new counsel and compel the defendant to proceed with his current lawyer. *Burgess*, 816 S.W.2d at 428-29, *citing Robles v. State*, 577 S.W.2d 699, 704-05 (Tex.Crim.App. 1979). A trial court's refusal to dismiss counsel will stand absent an abuse of discretion. *Coleman v. State*, 246 S.W.3d 76, 85 (Tex.Crim.App. 2008); *Keys v. State*, 486 S.W.2d 958, 959 (Tex.Crim.App. 1972). There is no

12

abuse of discretion if the trial court's ruling is reasonably supported by the record and is correct under any theory of applicable law to this case. *Amador v. State*, 275 S.W.3d 872, 878-79 (Tex.Crim.App. 2009); *Coutta v. State*, 385 S.W.3d 641, 663 (Tex. App.—El Paso 2012, no pet.).

*Analysis*

The trial court denied Appellant new counsel and compelled him to proceed to trial with court-appointed counsel Vanzura. On appeal, Appellant asserts that he presented to the trial court sufficient grounds for removal of Vanzura; namely, significant lack of contact, failure to subpoena defense witnesses, minimal communication with Appellant over an 18-month period, Vanzura's agreement to be substituted by retained counsel, and Vanzura's admission that he had names but no addresses for defense witnesses. The State proffers and we agree, that the trial court did not prevent Appellant from obtaining counsel of his choice. The trial court attempted to accommodate Appellant by allowing him to substitute a retained attorney, however, the trial court was not willing to grant a continuance and further delay trial to accommodate a change in counsel. Additionally, the trial court had agreed to substitute appointed counsel for Marsala until Appellant became upset with Marsala and accused Marsala of, "trying to be shady in front of this judge," and said he would rather hire Wohr. The trial court also asked Appellant if he wanted to represent himself, and Appellant declined the opportunity.

Ultimately, in response to Appellant's last minute request to change counsel, the trial court opted to deny new counsel and compelled Appellant to proceed to trial with Vanzura as it was permitted. *Burgess*, 816 S.W.2d at 428-29. The trial court did not abuse its discretion because its decision to deny new counsel is reasonably supported by the record and is correct under the theory of applicable law pertaining to last minute requests to change counsel. *Amador,* 275

13

S.W.3d at 878-79; *Coutta*, 385 S.W.3d at 663. *See also Burgess*, 816 S.W.2d at 428-29, *citing Robles*, 577 S.W.2d at 704-05. Issue Two is overruled.

*Chain of Custody*

Following the post-trial hearing ordered by this Court, Appellant filed a supplemental brief presenting two additional issues for our review.[2] In Issue Three, Appellant claims the trial court erred when it found there was no showing of tampering of the blood sample and that a proper chain of custody of the blood sample had been established. In Issue Four, Appellant contends the admission of laboratory results of his blood specimen was error and resulted in a violation of Appellant's due process rights.

*Standard of Review*

A proper chain of custody for a blood sample drawn from the accused must be established for the results of any tests conducted on the sample to be admissible evidence. *Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd). Proof of the beginning and end of the chain of custody will support admission of the blood sample absent any showing of tampering or alteration. *Id.* Theoretical breaches in the chain of custody without evidence of tampering go to the weight of the evidence, not its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex.Crim.App. 1997), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997). Additionally, establishing that an opportunity for tampering or commingling existed absent affirmative evidence such occurred, is not sufficient to require exclusion of the evidence. *Darrow v. State*, 504 S.W.2d 416, 417 (Tex.Crim.App. 1974); *Dossett v. State*, 216 S.W.3d 7, 18 (Tex. App.—San Antonio 2006, pet. ref'd). The trial court's admission of a blood sample and

---

[2] The State did not file a supplemental reply brief to aid us in our consideration of these issues.

subsequent laboratory results is reviewed for an abuse of discretion. *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 264 (Tex.Crim.App. 2001).

*Analysis*

The investigation and audit of the Lewisville Police Department property room identified three errors regarding Appellant's blood sample. First, the police department's property sheet did not document movement of the blood specimen from the phlebotomist to the officer. Second, the police department's property sheet did not document the movement of his blood specimen from the lab back into the police department's property room. And third, Item #1, Appellant's blood specimen, is missing from the police department's property room.[3]

Appellant contends the chain of custody cannot be properly established because the phlebotomist who drew Appellant's blood, Garland Osborn, did not personally testify and his supervisor's testimony was insufficient in establishing the beginning of the chain of custody. The trial court found, as shown during trial, Officer Gibbins received Appellant's blood sample from the phlebotomist. Although Osborn's supervisor did not testify regarding the beginning of the chain of custody of Appellant's blood sample, Officer Martinez and Officer Gibbins testified that they witnessed Osborn draw Appellant's blood. Officer Gibbins testified regarding the identification process he used to label Appellant's blood sample as well the process by which the blood was drawn, sealed, and delivered to the police department's property room.

Appellant asserts additional reasons why the chain of custody was not properly established, including the shipment of his blood sample by FedEx to an unknown location; Lewisville Police

---

[3] Appellant does not contest the trial court's finding regarding the third identified error. The trial court found that Item #1 is not missing, it is not being held in the Lewisville Police Department property room because it is in the Denton County District Clerk's Office.

15

Lieutenant Daniel Rochelle, who was assigned to oversee the property room testified at the post-trial hearing that he could only make assumptions regarding the blood sample's various movements in the chain of custody; Officer Rochelle explained that he could only assume technician Bill Hines had not tampered with or otherwise violated the integrity of Appellant's blood sample. And, Ron Fazio conducted tests on the blood sample but he was not properly noted on the property sheet. These are only theoretical breaches in the chain of custody, and absent any evidence of tampering, they only go to the weight of the evidence, not its admissibility. *Lagrone*, 942 S.W.2d at 617.

Appellant also complains that the police department's property sheet does not document the movement of his blood specimen from the lab back into the police department's property room. The trial court found that the evidence at trial showed Appellant's blood specimen was not taken from the lab back to the property room but, instead, was transferred directly from the lab to the trial court and that Prosecutor Paul Hiemke had signed to receive it. This finding is supported by evidence in the record.

In Issue Three, Appellant contests the trial court's finding that there has been no showing of tampering or alteration of his blood sample. Specifically, Appellant argues that technician Bill Hines, the only person documented to have handled the blood sample while in the custody of the Lewisville Police Department property room, had the opportunity to tamper with the blood sample and, therefore, the integrity of the blood sample cannot be ensured. His argument relies on the fact that Hines had been accused of taking money and abandoned property from the Lewisville Police Department property room and was found to have been involved in the improper storage, tracking, and failure to order tests of certain pieces of biological evidence. Appellant also asserts

the blood sample was tampered with and altered when the cap was removed, significant amounts of blood were taken out, and items were introduced into the sample.

Appellant only sets forth facts establishing opportunities for tampering or commingling existed, but presents no affirmative evidence that tampering occurred. Therefore, the exclusion of Appellant's blood sample and its test results was not required. *See Darrow*, 504 S.W.2d at 417; *Dossett*, 216 S.W.3d at 18. We note that Appellant's assertion that his blood sample experienced tampering and alteration pertain to the testimony of Aliece Watts, a Quality Director for Integrated Forensic Laboratories regarding the lab's routine for testing blood samples. We do not agree with Appellant that the laboratory's usual procedure for testing blood samples by itself is evidence of tampering or alteration of a blood sample. Additionally, Watts testified the blood sample arrived at their lab sealed with tape and showed no indications that the condition of the sample was poor or that the sample had been tampered with prior to its arrival at the lab.

Having reviewed the record, we conclude the testimony of Officers Martinez and Gibbins established the beginning of the chain of custody, and the transfer of Appellant's blood sample from the lab directly to court and then the State's prosecutor established the end of the chain of custody. *Penley*, 2 S.W.3d at 537 (proof of the beginning and end of the chain of custody will support admission of the blood sample). Absent any affirmative evidence of tampering, the theoretical breaches in the chain of custody Appellant points to are insufficient to deem the blood sample inadmissible. *See Lagrone*, 942 S.W.2d at 617. Finding no abuse of discretion in the trial court's findings of facts and conclusions of law regarding the admissibility of Appellant's blood sample, we overrule Issue Three. *Hall*, 13 S.W.3d at 120.

Appellant's Issue Four claim his due process rights were violated is predicated on the

17

erroneous admission of the blood sample evidence as set forth in Issue Three. Because we have determined in Issue Three that Appellant's blood sample was not erroneously admitted, we need not reach Issue Four. Issue Four is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

May 14, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)